# EXHIBIT A

STATE OF WEST VIRGINIA

COUNTY OF RALEIGH SS:

    I, PAUL H. FLANAGAN, Clerk of the Circuit Court of Raleigh County do hereby certify that the foregoing is a true and correct copy from the records of my office as the same exists therein.

    IN TESTIMONY WHEREOF, I hereunto place my hand and affix the official seal of this Court, at Beckley this the _21st_ day of _April_ , 20 _22_ .

_Paul H. Flanagan_
Clerk.

**Case Docket Entries**

CC-41-2021-C-353

| Court: | **Circuit** | County: | **41 - Raleigh** | Created Date: | **12/2/2021** | Security Level: | **Public** |
|---|---|---|---|---|---|---|---|
| Judge: | **Andrew Dimlich** | Case Type: | **Civil** | Case Sub-Type: | **Tort** | Status: | **Open** |

Related Cases:

Style: **Charles Nelson v. Marfork Coal Company, LLC**

| | Entered Date | Event | Ref. Code | Description |
|---|---|---|---|---|
| 1 | 12/2/2021 12:27:04 PM | E-Filed | | Complaint |
| | 1-1 12/2/2021 | Civil Case Information Statement | | |
| | 1-2 12/2/2021 | Complaint - Complaint | | |
| | 1-3 12/2/2021 | Transmittal | | |
| | 1-4 12/2/2021 | Summons | | |
| 2 | 12/2/2021 12:27:04 PM | Judge Assigned | J-41002 | Andrew Dimlich |
| 3 | 12/2/2021 12:27:04 PM | Party Added | P-001 | Charles Nelson |
| 4 | 12/2/2021 12:27:04 PM | Party Added | D-001 | Marfork Coal Company, LLC |
| 5 | 12/2/2021 12:27:04 PM | Party Added | D-002 | Maxxim Shared Services, LLC |
| 6 | 12/2/2021 12:27:04 PM | Party Added | D-003 | Contura Energy, Inc. |
| 7 | 12/2/2021 12:27:04 PM | Party Added | D-004 | Alpha Metallurigical Resources, Inc. |
| 8 | 12/2/2021 12:27:04 PM | Attorney Listed | P-001 | A-7905 - Robert Bruce Warner |
| 9 | 12/2/2021 12:27:04 PM | Service Requested | D-001 | Plaintiff - Secretary of State |
| 10 | 12/2/2021 12:27:04 PM | Service Requested | D-002 | Plaintiff - Secretary of State |
| 11 | 12/2/2021 12:27:04 PM | Service Requested | D-003 | Plaintiff - Secretary of State |
| 12 | 12/2/2021 12:27:04 PM | Service Requested | D-004 | Plaintiff - Secretary of State |
| 13 | 3/24/2022 11:06:23 AM | E-Filed | | Amended Complaint - Amended Complaint |
| | 13-1 3/24/2022 | Civil Case Information Statement | | |
| | 13-2 3/24/2022 | Amended Complaint - Amended Complaint | | |
| | 13-3 3/24/2022 | Transmittal | | |
| | 13-4 3/24/2022 | Summons | | |
| 14 | 3/24/2022 11:06:23 AM | Attorney Listed | P-001 | A-11068 - Andrew David Byrd |
| 15 | 3/24/2022 11:06:23 AM | Service Requested | D-001 | Plaintiff - Secretary of State |
| 16 | 3/24/2022 11:06:23 AM | Service Requested | D-002 | Plaintiff - Secretary of State |
| 17 | 3/24/2022 11:06:23 AM | Service Requested | D-003 | Plaintiff - Secretary of State |
| 18 | 3/24/2022 11:06:23 AM | Service Requested | D-004 | Plaintiff - Secretary of State |
| 19 | 4/1/2022 10:44:46 AM | E-Docketed | | Service Return - REC RETURN OF SERVICE, ACCEPTED BY SEC OF STATE ON BEHALF OF MARFORK COAL COMPANY LLC, 3/28/22 |
| | 19-1 4/1/2022 | Service Return - REC RETURN OF SERVICE, ACCEPTED BY SEC OF STATE ON BEHALF OF MARFOR COAL COMPANY LLC, 3/28/22 | | |
| | 19-2 4/1/2022 | Transmittal | | |
| 20 | 4/1/2022 10:47:02 AM | E-Docketed | | Service Return - REC RETURN OF SERVICE, ACCEPTED BY SEC OF STATE ON BEHALF OF MAXXIM SHARED SERVICES, LLC, 3/28/22 |
| | 20-1 4/1/2022 | Service Return - REC RETURN OF SERVICE, ACCEPTED BY SEC OF STATE ON BEHALF OF MAXXIM SHARED SERVICES, LLC, 3/28/22 | | |
| | 20-2 4/1/2022 | Transmittal | | |
| 21 | 4/1/2022 10:49:54 AM | E-Docketed | | Service Return - REC RETURN OF SERVICE, ACCEPTED BY SEC OF STATE ON BEHALF OF CONTURA ENERGY INC, 3/28/22 |
| | 21-1 4/1/2022 | Service Return - REC RETURN OF SERVICE, ACCEPTED BY SEC OF STATE ON BEHALF OF CONTUR, ENERGY INC, 3/28/22 | | |
| | 21-2 4/1/2022 | Transmittal | | |

# Case Docket Entries

CC-41-2021-C-353

| | Entered Date | Event | Ref. Code | Description |
|---|---|---|---|---|
| 22 | 4/1/2022 10:52:32 AM | E-Docketed | | Service Return - REC RETURN OF SERVICE, ACCEPTED BY SEC OF STATE ON BEHALF OF ALPHA METALLURIGICAL RESOURCES, 3/28/22 |
| | 22-1  4/1/2022 | Service Return - REC RETURN OF SERVICE, ACCEPTED BY SEC OF STATE ON BEHALF OF MAXXIM SHARED SERVICES, LLC, 3/28/22 | | |
| | 22-2  4/1/2022 | Transmittal | | |

CC-41-2021-C-353
Raleigh County Circuit Clerk
Paul H. Flanagan

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

PAUL FLANAGAN RALEIGH COUNTY CIRCUIT CLERK
222 MAIN STREET
SUITE 201
Beckley, WV 25801-4688

**Control Number:** 290827

**Defendant:** CONTURA ENERGY, INC.
251 LITTLE FALLS DRIVE
WILMINGTON, DE 19808 US

**Agent:** CORPORATION SERVICE
COMPANY

**County:** Raleigh

**Civil Action:** 21-C-353

**Certified Number:** 92148901125134100003484800

**Service Date:** 3/28/2022

I am enclosing:

**1 summons and amended complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of your unauthorized foreign corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in the name and on behalf of your unauthorized foreign corporation as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, not to the Secretary of State's office.*

Sincerely,

Mac Warner

Mac Warner
Secretary of State

# SUMMONS

E-FILED | 3/24/2022 11:06 AM
CC-41-2021-C-353
Raleigh County Circuit Clerk
Paul H. Flanagan

## IN THE CIRCUIT OF RALEIGH WEST VIRGINIA
### Charles Nelson v. Marfork Coal Company, LLC

Service Type:    Plaintiff - Secretary of State

NOTICE TO:    Contura Energy, Inc., c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Andrew Byrd, P.O. Box 3327, Charleston, WV 25333

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

| 3/24/2022 11:06:21 AM | /s/ Paul H. Flanagan |
|---|---|
| Date | Clerk |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to _____ , a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

| Date | Server's Signature |
|---|---|

FILED 7/1/2022 10:52 AM
CC-41-2021-C-353
Raleigh County Circuit Clerk
Paul H. Flanagan

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

PAUL FLANAGAN RALEIGH COUNTY CIRCUIT CLERK
222 MAIN STREET
SUITE 201
Beckley, WV 25801-4688

**Control Number:** 290826

**Defendant:** ALPHA METALLURIGICAL
RESOURCES, INC.
251 LITTLE FALLS DRIVE
WILMINGTON, DE 19808 US

**Agent:** CORPORATION SERVICE
COMPANY
**County:** Raleigh
**Civil Action:** 21-C-353
**Certified Number:** 92148901125134100003484794
**Service Date:** 3/28/2022

I am enclosing:

**1 summons and amended complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in the name and on behalf of your unauthorized foreign corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in the name and on behalf of your unauthorized foreign corporation as your attorney-in-fact. Please address any
questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the
Secretary of State's office**.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

## SUMMONS

E-FILED | 3/24/2022 11:06 AM
CC-41-2021-C-353
Raleigh County Circuit Clerk
Paul H. Flanagan

### IN THE CIRCUIT OF RALEIGH WEST VIRGINIA
### Charles Nelson v. Marfork Coal Company, LLC

Service Type:    Plaintiff - Secretary of State

NOTICE TO:   Alpha Metallurigical Resources, Inc., c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR
RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR
DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR
HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Andrew Byrd, P.O. Box 3327, Charleston, WV 25333

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT
BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

3/24/2022 11:06:21 AM                     /s/ Paul H. Flanagan
            Date                                          Clerk

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on  _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to  _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to
_____ , a member of the individual's family who is above the age of sixteen (16) years and by

advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

_____                 _____
            Date                                   Server's Signature

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
888-767-8683
**Visit us online:**
www.wvsos.com

PAUL FLANAGAN RALEIGH COUNTY CIRCUIT CLERK
222 MAIN STREET
SUITE 201
Beckley, WV 25801-4688

**Control Number:** 290828

**Defendant:** MAXXIM SHARED SERVICES, LLC
209 West Washington Street
Charleston, WV 25302 US

**Agent:** Corporation Service Company
**County:** Raleigh
**Civil Action:** 21-C-353
**Certified Number:** 92148901125134100003484817
**Service Date:** 3/28/2022

I am enclosing:

**1 summons and amended complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document
directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

# SUMMONS

E-FILED | 3/24/2022 11:06 AM
CC-41-2021-C-353
Raleigh County Circuit Clerk
Paul H. Flanagan

## IN THE CIRCUIT OF RALEIGH WEST VIRGINIA
### Charles Nelson v. Marfork Coal Company, LLC

Service Type:    Plaintiff - Secretary of State

NOTICE TO:    Maxxim Shared Services, LLC, c/o Corporation Service Company, 209 West Washington Street, Charleston, WV 25302
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Andrew Byrd, P.O. Box 3327, Charleston, WV 25333

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

| 3/24/2022 11:06:21 AM | /s/ Paul H. Flanagan |
|---|---|
| Date | Clerk |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to _____ , a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

| _____ | _____ |
|---|---|
| Date | Server's Signature |

FILED | 4/1/2022 10:44 AM
CC-41-2021-C-353
Raleigh County Circuit Clerk
Paul H. Flanagan

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

PAUL FLANAGAN RALEIGH COUNTY CIRCUIT CLERK
222 MAIN STREET
SUITE 201
Beckley, WV 25801-4688

**Control Number:** 290829

**Defendant:** MARFORK COAL COMPANY, LLC
209 West Washington Street
Charleston, WV 25302 US

**Agent:** Corporation Service Company
**County:** Raleigh
**Civil Action:** 21-C-353
**Certified Number:** 92148901125134100003484824
**Service Date:** 3/28/2022

I am enclosing:

**1 summons and amended complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office**.*

Sincerely,

Mac Warner

Mac Warner
Secretary of State

# SUMMONS

E-FILED | 3/24/2022 11:06 AM
CC-41-2021-C-353
Raleigh County Circuit Clerk
Paul H. Flanagan

## IN THE CIRCUIT OF RALEIGH WEST VIRGINIA
## Charles Nelson v. Marfork Coal Company, LLC

Service Type:   Plaintiff - Secretary of State

NOTICE TO:   Marfork Coal Company, LLC, c/o Corporation Service Company, 209 West Washington Street, Charleston, WV 25302
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Andrew Byrd, P.O. Box 3327, Charleston, WV 25333

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

3/24/2022 11:06:21 AM                      /s/ Paul H. Flanagan
Date                                                        Clerk

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on  _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to  _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to
_____ , a member of the individual's family who is above the age of sixteen (16) years and by

advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

_____                      _____
Date                                                          Server's Signature

E-FILED | 12/2/2021 12:27 PM
CC-41-2021-C-353
Raleigh County Circuit Clerk
Paul H. Flanagan

IN THE CIRCUIT COURT OF RALEIGH COUNTY, WEST VIRGINIA

CHARLES NELSON,

      Plaintiff,

v.                              CIVIL ACTION NO._____
                                   JUDGE_____

MARFORK COAL COMPANY, LLC;
MAXXIM SHARED SERVICES, LLC;
CONTURA ENERGY, INC. k/n/a
ALPHA METALLURGICAL RESOURCES, INC.,

      Defendants.

## COMPLAINT

NOW COMES the Plaintiff Charles Nelson, by counsel, Warner Law Offices, PLLC, Robert B. Warner and Andrew D. Byrd, and for his Complaint against the Defendants Marfork Coal Company, LLC, Maxxim Shared Services, LLC, Contura Energy, Inc. and Alpha Metallurgical Resources, Inc., alleges and avers as follows:

1.      The Plaintiff, Charles Nelson is and was at all times relevant hereto, a resident of Wayne County, West Virginia.

2.      Upon information and belief, Defendant Marfork Coal Company, LLC is a West Virginia limited liability company with a principal office address of 370 Packsville/Marfork Road, Whitesville, West Virginia 25209. Marfork Coal Company, LLC is authorized to do and does do business in Raleigh County, West Virginia.

3.      Upon information and belief, Defendant Maxxim Shared Services, LLC, is a Delaware corporation with a principal office address of 340 Martin Luther King, Jr., Blvd., Bristol Tennessee, 37620. Maxxim Shared Services, LLC is authorized to do and does do business in Raleigh County, West Virginia.

4.      Upon information and belief, Defendant Contura Energy, Inc., is a Delaware corporation with a principal office address of 340 Martin Luther King, Jr., Blvd., Bristol Tennessee, 37620. Contura Energy, Inc. is authorized to do and does do business in Raleigh County, West Virginia.

5.      Upon information and belief, Defendant Alpha Metallurgical Resources, Inc., is a Delaware corporation with a principal office address of 340 Martin Luther King, Jr., Blvd., Bristol Tennessee, 37620. Alpha Metallurgical Resources, Inc. is authorized to do and does do business in Raleigh County, West Virginia.

6.      Upon information and belief, the incident which forms the basis of this Complaint occurred at the Panther Eagle underground coal mine (hereinafter "Panther Eagle Mine") located in Raleigh County, West Virginia.

7.      This Court has jurisdiction over the parties and venue is appropriate in accordance with West Virginia Code § 23-4-2(e).

## GENERAL ALLEGATIONS

8.      Prior to December 12, 2019, Plaintiff Charles Nelson became employed as a non-supervisory employee by Defendant Marfork Coal Company, LLC, as a shuttle car operator at the Panther Eagle Mine in Raleigh County, West Virginia.

9.      On or about December 12, 2019, in the course and scope of his employment with Defendant Marfork Coal Company, LLC, Mr. Nelson was operating a shuttle car in the #6 Entry of the Panther Eagle Mine.  As directed by his immediate supervisor, Mr. Nelson was tasked with moving the anchor/cable of the shuttle car from the #6 Entry to the first intersection.

10.      While Mr. Nelson was getting out of his shuttle car to continue moving the anchor/cable, a co-worker operating another shuttle car came through the fly pads between the #5

Entry and the #6 Entry, striking Mr. Nelson and the shuttle car. The force of the collision knocked Mr. Nelson nearly ten (10) feet from the shuttle car onto the mine floor.

11.      As a result, Mr. Nelson suffered severe and permanent physical injuries to his head, neck, right shoulder, right arm, back, left leg, right leg and right foot, as well as, permanent mental injuries.

## COUNT I – DELIBERATE INTENT
## (MARFORK COAL COMPANY, LLC)

12.      Plaintiff incorporates by reference all previous paragraphs to this Complaint as if fully restated herein.

13.      At all times relevant hereto, Plaintiff Charles Nelson was an employee of Defendant Marfork Coal Company, LLC.

14.      At all times relevant hereto, Plaintiff Charles Nelson was operating a shuttle car and performing tasks as directed from his immediate supervisor at the Panther Eagle Mine in Raleigh County, West Virginia.

15.      The conduct of Defendant Marfork Coal Company, LLC constitutes "deliberate intention" as set forth in West Virginia Code §23-4-2(d)(2)(B).

16.      On and before December 12, 2019, specific unsafe working conditions existed at the workplace of Plaintiff Charles Nelson that presented a high degree of risk and strong probability of serious injury or death, including but not necessarily limited to the fact that Plaintiff Charles Nelson was required to operate a shuttle car and perform tasks in the Panther Eagle Mine where his employer: failed to ensure that adequate task training had been provided to the shuttle car operator who collided with Mr. Nelson; failed to remove an unsafe shuttle car with defective brakes from service; failed to properly inspect and repair shuttle cars being operated in the Panther Eagle Mine with known safety defects; and failed to take corrective action regarding the shuttle

3

car operator who collided with Mr. Nelson - who had exhibited a reckless disregard for the safety of other miners on the working section by operating the shuttle car at high speeds and without regard to the locations of other miners.

17. Prior to Plaintiff Charles Nelson's injury, Defendant Marfork Coal Company, LLC had actual knowledge of the specific unsafe working conditions, and the high degree of risk and strong probability of serious injury or death presented by the unsafe conditions by virtue of the fact that miners at the Panther Eagle Mine had made prior safety complaints to immediate supervisors and management personnel and by virtue of the fact that Defendant Marfork Coal Company, LLC had knowledge of prior similar accidents and near misses.

18. The actual knowledge of Defendant Marfork Coal Company, LLC is further evidenced, in part, by its deliberate and intentional failure to conduct an inspection, audit or assessment required by state and federal safety statutes (i.e. MSHA and WVOMHST) which are specifically intended to identify and alleviate the alleged specific unsafe working conditions.

19. At the aforesaid time and place, said specific unsafe working conditions were a violation of state and federal safety statutes, rules and regulations, including but not necessarily limited to, 30 CFR § 48.7, 30 CFR § 75.360, 30 CFR § 75.362, 30 CFR § 75.363, 30 CFR § 75.512, 30 CFR § 75.1725, W.Va. Code § 22A-2-14, W.Va. CSR § 36-4-1, W.Va. CSR § 36-12-4.1.20, and W.Va. CSR § 36-18-4, which are specifically applicable to the work and working conditions involved and intended to identify and alleviate the specific hazards presented by the specific unsafe working conditions.[1]

20. Notwithstanding the existence of the aforementioned specific unsafe working conditions, all of which Defendant Marfork Coal Company, LLC had actual knowledge, and which

---

[1] A verified statement, as required by W.Va. Code § 23-4-2(d)(2)(C), is attached hereto as "**Exhibit 1**."

violated MSHA regulations and West Virginia law, Defendant Marfork Coal Company, LLC nevertheless deliberately and intentionally exposed Plaintiff Charles Nelson to these specific unsafe working conditions.

21.     As a direct and proximate result of the acts of Defendant Marfork Coal Company, LLC, and exposure to the aforementioned specific unsafe working conditions, Plaintiff Charles Nelson suffered severe injuries, tremendous pain and suffering, permanent bodily injury, as well as loss of the ability to perform household services, loss of the ability to enjoy life, lost wages, loss of future earning capacity, humiliation, embarrassment, annoyance, aggravation, mental anguish and inconvenience, as well as other economic and non-economic damages which he will in all likelihood continue to suffer into the foreseeable future.[2]

## COUNT II – NEGLIGENCE
## (MAXXIM SHARED SERVICES, LLC)

22.     Plaintiff incorporates by reference all previous paragraphs to this Complaint as if fully restated herein.

23.     Upon information and belief, during the relevant time periods herein, Defendant Maxxim Shared Services, LLC provided mine safety, engineering, equipment transfers and other support services to Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc.'s subsidiary mine operators, including the Panther Eagle Mine in which Plaintiff Charles Nelson was working at the time of the subject incident.

24.     Defendant Maxxim Shared Services, LLC owed a duty to provide coal miners, including Plaintiff Charles Nelson, with reasonably safe work environment, safe mining equipment

---

[2] Plaintiff states that pursuant to W.Va. Code § 23-4-2(d)(2)(B)(v)(I)(a), a final award in the Plaintiff's worker's compensation claim has not been entered; and thus, Plaintiff is filing the instant Complaint to preserve his statute of limitations while awaiting a final award so as to determine if Plaintiff has met the thirteen percent (13%) impairment requirement set forth in said statute.

and to adopt and implement safe mining practices and procedures in conformity with federal and state mining laws and regulations.

25.     Upon information and belief, through its involvement in safety and support measures for Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc. subsidiaries and the mines they operated, Defendant Maxxim Shared Services, LLC had a duty to ensure that coal at the Panther Eagle Mine was mined in compliance with federal and state mining laws and regulations.

26.     Defendant Maxxim Shared Services, LLC breached its duty of care owed to Plaintiff Charles Nelson by: failing to provide reasonable and prudent safety monitoring and oversight to ensure compliance with all federal and state mine safety rules, regulations and statutes at the Panther Eagle Mine; failing to ensure that adequate task training had been provided to shuttle car operators; failing to remove unsafe shuttle cars with defective brakes from service; failing to properly inspect and repair shuttle cars being operated in the Panther Eagle Mine with known safety defects; and failing to take corrective action regarding shuttle car operators who had exhibited a reckless disregard for the safety of other miners.

27.     Defendant Maxxim Shared Services, LLC breached its duty of care owed to Plaintiff Charles Nelson by engaging in conscious, reckless and outrageous indifference to the health, safety and welfare of the miners at the Panther Eagle Mine.

28.     As a direct and proximate result of Defendant Maxxim Shared Services, LLC's breach of its duty of care to Plaintiff Charles Nelson, he suffered severe injuries, tremendous pain and suffering, permanent bodily injury, as well as loss of the ability to perform household services, loss of the ability to enjoy life, lost wages, loss of future earning capacity, humiliation, embarrassment, annoyance, aggravation, mental anguish and inconvenience, as well as other

economic and non-economic damages which he will in all likelihood continue to suffer into the foreseeable future.

29.     As a direct and proximate result of the negligent, careless, and reckless acts and/or omissions of Defendant Maxxim Shared Services, LLC, its employees, agents and representatives, Plaintiff Charles Nelson asserts claims for both compensable and punitive damages.

**COUNT III – NEGLIGENCE**
**(CONTURA ENERGY, INC. and/or ALPHA METALLURGICAL RESOURCES, INC.)**

30.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully restated herein.

31.     Upon information and belief, during the relevant time periods herein, Defendant Marfork Coal Company, LLC was and continues to be a subsidiary of Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc., the controller of the Panther Eagle Mine, as reported to the U.S. Department of Labor, Mine Safety and Health Administration.

32.     Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc., owed Plaintiff Charles Nelson the duty to provide him with a reasonably safe working environment, including, but not limited to, a mine where adequate task training is provided to the shuttle car operators; a mine where unsafe shuttle cars with defective brakes are removed from service; a mine that properly inspects and repairs shuttle cars being operated in it with known safety defects; and a mine that takes corrective action regarding the shuttle car operators who exhibit a reckless disregard for the safety of other miners.

33.     The establishment of Defendant Marfork Coal Company, LLC did not change or alleviate Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc.'s basic compliance responsibilities with the federal Mine Safety and Health Act and other applicable state and federal statutes and regulations.  Defendant Contura Energy, Inc., and/or Defendant

Alpha Metallurgical Resources, Inc., was responsible for compliance of the Panther Eagle Mine with all applicable provisions of the Federal Mine Safety and Health Act and other applicable state and federal statutes and regulations.

34.     It was reasonably foreseeable to Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc. that the failure of its subsidiaries to adequately task train its shuttle car operators; to remove from service unsafe shuttle cars with defective brakes; to properly inspect and repair shuttle cars being operated with known safety defects; and to take corrective action regarding shuttle car operators who exhibit a reckless disregard for the safety of other miners would result in serious injury and/or death.

35.     Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc. breached its duty of care owed to Plaintiff Charles Nelson by engaging in conscious, reckless and outrageous indifference to the health, safety and welfare of the miners at the Panther Eagle Mine.

36.     As a direct and proximate result of Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc.'s breach of its duty of care to Plaintiff Charles Nelson, he suffered severe injuries, tremendous pain and suffering, permanent bodily injury, as well as loss of the ability to perform household services, loss of the ability to enjoy life, lost wages, loss of future earning capacity, humiliation, embarrassment, annoyance, aggravation, mental anguish and inconvenience, as well as other economic and non-economic damages which he will in all likelihood continue to suffer into the foreseeable future.

37.     As a direct and proximate result of the negligent, careless, and reckless acts and/or omissions of Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources,

Inc., its employees, agents and representatives, Plaintiff Charles Nelson asserts claims for both compensable and punitive damages.

**WHEREFORE**, the Plaintiff, Charles Nelson, by counsel, demands judgment against the Defendants Marfork Coal Company, LLC, Maxxim Shared Services, LLC, Contura Energy, Inc., and Alpha Metallurgical Resources, Inc., in an amount exceeding the jurisdictional minimum requirements of this Court, and in such sums as will fairly and fully compensate Mr. Nelson for his injuries, losses and damages, together with pre and post judgment interest, reasonable attorney fees and costs in and about the prosecution of this action. Plaintiff, by counsel, additionally demands judgment against Defendants Maxxim Shared Services, LLC, Contura Energy, Inc., and Alpha Metallurgical Resources, Inc., which is punitive in nature and is sufficient to punish these Defendants for their willful, wanton, and reckless disregard for the health, safety and welfare of the Plaintiff and others like him and to deter like conduct in the future, together with any and all further relief in favor of the Plaintiff that this Court deems just under the circumstances.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**CHARLES NELSON**
**By Counsel:**

*/s/ Robert B. Warner*
Robert B. Warner (WVSB #7905)
Andrew D. Byrd (WVSB #11068)
WARNER LAW OFFICES, PLLC
227 Capitol Street
Post Office Box 3327
Charleston, West Virginia 25333
Telephone: (304) 345-6789
Facsimile: (304) 344-4508
*bwarner@wvpersonalinjury.com*
*abyrd@wvpersonalinjury.com*

9

# Exhibit 1

**VERIFIED STATEMENT OF JACK SPADARO**
**PURSUANT TO W.Va. CODE § 23-4-2(d)(2)(C)**

I, Jack Spadaro, being duly sworn, hereby depose and say as follows:

1.    I am over the age of eighteen years, am not incarcerated and have not been adjudicated incompetent.

2.    As a former MSHA inspector, I have knowledge and expertise of the applicable workplace safety statutes, rules, regulations and/or written consensus industry safety, including but not limited to, those mining activities that fall under the Mine Safety and Health Administration (MSHA) and the West Virginia Office of Miners Health Safety and Training ("WVOMHST"). I have served as the Superintendent of the U.S. Department of Labor's National Mine Health & Safety Academy and as a mine safety consultant for labor unions, coal companies, and other organizations involved in mining health and safety on a national basis. I have extensive knowledge and expertise regarding the applicability of the workplace safety statutes, rules, regulations and/or written consensus industry safety standards that governed Charles E. Nelson's workplace and work assignments at the time of his serious injuries. A copy of my curriculum vitae, setting forth my education, training, and experience in surface and underground coal mining operations and regulations is attached hereto as **"Exhibit A."**

3.    Upon review of the preliminary facts in the matter of *Charles E. Nelson v. Marfork Coal Company, LLC et al.*, the specific unsafe working conditions that existed on and before December 12, 2019 at the Panther Eagle Mine, included, but are not necessarily limited to: failure to ensure that adequate task training had been provided to the shuttle car operator who collided with Mr. Nelson; failure to remove an unsafe shuttle car with defective brakes from service; failure to properly inspect and repair shuttle cars being operated in the Panther Eagle Mine with known safety defects; and failure to take corrective action regarding the shuttle car operator who collided with Mr. Nelson - who had exhibited a reckless disregard for the safety of other miners on the working section by operating the shuttle car at high speeds and without regard to the locations of other miners.

4.    At this time, the specific statutes, rules, regulations or written consensus industry safety standards violated by the employer that are directly related to the above-referenced specific unsafe working conditions and were the cause of Charles E. Nelson's serious injuries are:

- 30 CFR § 48.7
- 30 CFR § 75.360
- 30 CFR § 75.362
- 30 CFR § 75.363
- 30 CFR § 75.512
- 30 CFR § 75.1725
- W.Va. Code § 22A-2-14
- W.Va. CSR § 36-4-1
- W.Va. CSR § 36-12-4.1.20, and

- W.Va. CSR § 36-18-4.

And further this Affiant saith not.

_____
Jack Spadaro

STATE OF WEST VIRGINIA,

COUNTY OF _Kanawha_, TO-WIT:

I, _Tara S. Chandler_, a Notary Public in and for the State and County aforesaid, do hereby certify that Jack Spadaro, whose name is signed to the above Affidavit, has this day acknowledged the same before me in my said State and County.

Given under my hand this _29th_ day of _November_, 2021.

My commission expires _May 14, 2025_.

[SEAL]

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
TARA S CHANDLER
Werner Law Offices, PLLC
P.O. Box 3327
Charleston, WV 25333
My Commission Expires May 14, 2025

_____
Notary Public

Exhibit A

# Jack Spadaro
# Mine Safety & Health/Environmental Consultant
# Post Office Box 442
# Hamlin, WV 25523

Office: 304-824-3589
Cell: 304-590-6447
Email: spadarojack@aol.com

Environmental Investigations Mining
Mine Accident Investigations

## Professional Experience

1) **Mine Health & Safety and Environmental Consultant**        10/2004 to Present
   **Hamlin, WV**

### Duties and Accomplishments

I provide consulting services and expert witness services to attorneys, labor unions,
companies, and organizations involving the health and safety of miners in surface and
underground coal and metal/non-metal mines and mineral processing facilities on a
national basis.  I also provide consulting services regarding storm water runoff and
surface and underground mine environmental conditions related to water quality, ground
water systems, mine waste and tailings areas, surface drainage control facilities, and
stability of coal refuse dams, mine tailings areas, and valley fills.

I provide expertise in the application of the Mine Safety and Health Act to clients
needing advice and knowledge of the federal regulations and industry standards related to
mine worker health and safety.  I also provide services regarding the Federal Surface
Mining Control and Reclamation Act (SMCRA) and the Clean Water Act. I have testified
in state courts regarding flooding and storm water runoff related to surface mining
operations, gas and oil well construction sites, housing developments, highway
construction, valley fills, landslides, dams, mining waste areas, and drainage control
structures.

I provide expert witness services related to mining accidents and the mining environment
at coal mines and metal / non-metal mines. I have served as an expert witness in litigation
related to the Mine Safety and Health Act and SMCRA from 2004 to the present time.
The expertise is related to surface and underground haulage accidents, roof and rib
control, ventilation, exposure of workers to hazardous chemicals, mine tailings areas,
respirable mine dust exposure, use of dust masks and respirators, stability of dumping
sites, safety of road gradients, explosions, surface and underground transportation,
crushers and processing plant safety, and the overall mine work environment. I have
served as an expert witness in cases related to storm water runoff from surface mines and
gas well construction sites and pipeline construction. I have served as an expert witness
in complex litigation involving multiple plaintiffs and have served as an expert witness in

federal and state courts.  The testimony required extensive knowledge of mining and the mine environment and a thorough knowledge of both federal and state mine health and safety regulations and environmental regulations related to water quality and storm water runoff control.  I have been involved in litigation involving flooding and the stability of coal waste impoundments and surface mine waste fills. I have also testified as an expert regarding control of storm water runoff from housing developments, gas and oil well drilling operations, and pipeline construction activities.  These cases involved regulations and standards related to mine safety and health, storm water runoff and stability of earth and rock fill structures that I had a role in writing during my earlier career with the Office of Surface Mining and the Mine Safety and Health Administration.  I have testified in federal district courts regarding surface and underground mine safety standards and standards regarding landslides and storm water runoff damage from oil and gas drilling operations that caused damage to downstream residents. I have testified in federal and state courts in cases involving mine ventilation, roof and rib control, surface and underground haulage, equipment safety standards, and supervisory standards related to mins safety and health.

I have conducted investigations of mining accidents in coal mines and metal/non-metal mines and related mineral processing plants and tailings areas.  I wrote reports detailing the root causes of the accidents and made recommendations for improvement of the mine operations regarding health, safety, and the environment.  I have been recognized as an expert in mining safety and health and the mining environment at academic conferences examining the mining industry.

**2)  MSHA Academy Superintendent, GS-1712-15**          **9/30/98 to 9/30/04**

**Employer**                                                    **Supervisor**

**U.S. Department of Labor**                             Davitt McAteer
**Mine Safety and Health Administration**      Assistant Secretary of Labor
**National Mine Health & Safety Academy**     for Mine Safety and Health
**1301 Airport Road**
**Beaver, WV 25813**

**Duties and Accomplishments**

The National Mine Health and Safety Academy is the principal training facility for all federal Mine Safety and Health Administration (MSHA) inspectors and for other mining interests. As superintendent of the Academy, I provided leadership and exercised overall planning and management control, direction and coordination of resources, activities, programs, and facilities of the Academy, including the development, establishment and implementation of policies and procedures; the planning, development and implementation of national and international education and training programs in mine health and safety; and operation of the Academy's physical facilities. I determined program goals and exercised decision-making authority within the parameters of MSHA

policy and program objectives. During my tenure, I developed and implemented a Strategic Plan for improving the quality of training and the production of training materials for mine inspectors and industry.

Through subordinate managers, I directed a staff of professional, technical, and clerical personnel in the conduct of a variety of comprehensive programs designed to accomplish the Academy's goals. During my tenure, the Academy had a staff of 65 full-time federal employees and 67 contract employees.  I planned, developed, and implemented the educational and training programs of the Academy. I developed program goals, objectives and proposals. I was responsible for the development and administration of individualized study materials and education programs for nonresident students from federal, state, and local government agencies, from industry and labor organizations, and from educational institutions.

I planned and developed seminars and conferences on mine safety and health and related programs to be conducted at the Academy and at other locations. I was responsible for overseeing the management of the Technical Information Center and Library, and for acquiring and making available appropriate and up-to-date reference materials to meet customer needs.

I was responsible for development of studies designed to evaluate the effectiveness of the Academy's educational programs, and to determine needs for revisions in curricula based on changes in materials, industries and in educational processes. I also directed significant changes in the curricula for Entry Level and Journeyman MSHA inspector training.

I was responsible for development and implementation of support programs for services at the Academy for staff, faculty, and students. Support programs include administrative services, ancillary staff services support, student housing, recreation, internal safety, health services, and physical plant services. I managed the implementation of a capital improvement program to modernize classrooms, residence halls and computer capabilities.

I maintained liaison with key officials in MSHA, academia, industry and other organizations concerned with improved education techniques and methodologies related to safety and health issues. I developed and maintained relationships with universities, colleges, vocational schools, and secondary school to promote training and educational courses in the mineral industries, and to further the recognized stature of the Academy as a leading educational institution in mine health and safety. I participated in cooperative agreements with several colleges and universities and the Appalachian Consortium.

I delegated authority to subordinate managers for the personnel and program management of their respective areas. I evaluated the performance and review evaluations of subordinate supervisors. I conducted staff meetings, and provided advice and counsel on both program and administrative matters, and guidance in the solution of

special problems. During my tenure, I helped improve the effectiveness of each program area by communicating regularly and exchanging information among departments.

I served as a team leader in the investigation of the Martin County Coal Slurry Discharge, which occurred on Oct. 11, 2000 in Martin County, Kentucky. I managed the geotechnical engineering investigation of the slurry discharge, which was the largest and most serious pollution event in the eastern United States. I oversaw the drilling operations, laboratory analysis and the writing of the engineering evaluation regarding the causes of the incident.

During my tenure, I upgraded all training programs at the Academy. As a result, course days of training the Academy increased from 497 to 2,200. Enrollment increased from 17,000 students per year to 30,000 students per year.

**3)  Deputy Superintendent, GS-301-14**                          **1/05/97 to 8/30/1998**

**Employer**                                                      **Supervisor**

**U.S. Department of Labor**                                      **Davitt McAteer**
**Mine Safety and Health Administration**                         **Assistant Secretary of**
**National Mine Health and Safety Academy**                       **Labor for Mine Safety**
**1301 Airport Road**                                             **and Health**
**Beaver, WV 24813**

**Duties and Accomplishments**

As deputy superintendent, I was the day-to-day operations manager at the National Mine Health and Safety Academy. I assisted the Superintendent to plan, develop and implement the education and training programs of the Academy. I worked with department managers to direct a staff of professional, technical, and support personnel in the conduct of comprehensive programs designed to accomplish the Academy's goals.

I oversaw the human resources program for Academy employees, including work assignments, performance [standards, appraisals, rewards, disciplinary actions], safety and health programs, counseling, complaint systems, and leave systems. I worked directly with federal and state agency administrators to conduct research and technology transfer projects to further the Academy's goals.

I supervised the implementation of a long-term Strategic Plan that outlined the mission of the Academy. The plan included faculty and staff development and a program development plan to provide training programs and instructional materials that meet the highest educational and technical standards of quality. I directed attention to essential technical areas to provide improved training in surface and underground haulage safety, roof control safety, underground machinery and electrical safety, and industrial hygiene

related to the mine environment. I guided a pilot training program in Surface Mine Haulage safety that is being used as a model for future programs.

I devised a restructuring plan for the Academy and supervised its implementation. The plan created new divisions in mining technology, safety management, inspection automation, and course development. I supervised a staff of 62 full-time federal employees and 58 contract employees. I supervised the departments of Instructional Services and Instructional Materials, the Technical Information Center and Library, and the Facilities Support Services.

The reorganization of the Academy resulted in a more even distribution of work by Academy employees and more effective education and training to MSHA inspectors, miners, mine supervisors, and training specialists. I set up committees to develop new programs and improve existing programs. Altogether, 16 working committees, made up of staff members from various disciplines, took on projects to improve the Academy's curricula and other Academy functions. These committees completed comprehensive plans in the areas of Program Development, New Technology in Training, Academic/International Relations, Facilities Utilization, Community Relations, Individual Development, Internet Usage, Library Usage, Marketing of the Academy's courses and products, and use of the Mine Simulation Laboratory. The New Technology Committee completed an outline of the best methods for delivering mine safety and health-related training to the mining community.

I initiated the development of roof control seminars to provide training to all coal mine inspectors that will ensure that the most current information in this subject area will be made available to the inspectors.  I also initiated conferences and seminars in the areas of noise and dust control in the mining environment, ventilation, blasting, construction, underground haulage safety, maintenance and repair safety, surface haulage safety, electrical hazards and inspection methods, and accident investigation.

I supervised the revision of entry-level training modules for metal, nonmetal and coal mine inspectors. The revision emphasized critical areas of the inspection process so that the early training is meaningful and comprehensive.

Under my supervision, the Academy negotiated cooperative agreements with six colleges and universities and joined the Appalachian Consortium to broaden the institution's expertise in various subject areas related to mine health and safety. The agreements include faculty exchanges, summer intern programs, and distance learning programs.

I included labor representatives in all phases of planning and implementation of revised and new programs. I created an individual development program that ensures that all employees have equal opportunity for advancement and additional professional development. This program allows Academy staff and students to receive credit toward associate, bachelor and master's degrees for courses taken at the Academy.

In 1998, I traveled to Russia and Ukraine to begin the development of an International Mine Health and Safety training program. Between 1998 and 2003, delegations from Russia, Ukraine, South Africa, China, Mexico, Poland, Peru, Georgia, Canada, Mexico, Thailand, and Indonesia have trained in mine health and safety at the Academy.

**4)  Mining Engineer, GS-880-13**                                    **4/96 to 1/97**

**Employer**                                                          **Supervisor**

**U.S. Department of Labor**                                          **George Fesak**
**Program Evaluation and Information Resources**
**4015 Wilson Boulevard**
**Arlington, VA 22203-1984**

I conducted a study of 1,300 haulage accidents at coal mines and metal / non-metal mines and wrote a report regarding the causes of the accidents. I made recommendations for haulage safety program that has been adopted by MSHA. I also served as special assistant to the Superintendent of the National Mine Health and Safety Academy to work on curriculum expansion in the areas of mine ventilation, underground haulage accident prevention, roof control, underground mine electricity and machinery, and health. I presented a technical paper at a seminar at Virginia Polytechnical Institute and State University in August 1996. The technical paper has been used as a basis for developing the new training program in surface and underground haulage and equipment safety.

I evaluated the overall training needs for the Academy and recommended a program that included a research-driven curriculum that was aimed at eliminating fatalities and injuries in mines. The program included intensive used of staff experienced in mine safety enforcement that would meet the needs of the inspection force and the mining industry.

I planned a training program for new surface haulage instructors that began in November 1996. The program was key to a nationwide inspection and enforcement effort that concentrated on the critical safety and health needs of industry regarding steep haul roads, unsafe dump and fill sites, and vehicle maintenance programs.

**5)  Mining Engineer, GS-880-13**                                    **3/82 to 4/96**

**Employer**                                                          **Supervisor**
**Office of Surface Mining**                                          **James Gilley**
**U.S. Department of the Interior**
**10 Parkway Center**
**Pittsburgh, PA 15520**

## Duties and Accomplishments

I was responsible for design and construction of health and safety hazard abatement, acid mine drainage abatement, landslide stabilization, subsidence control, surface water runoff drainage control, and mine fire projects in Kentucky, Virginia, West Virginia, Ohio, Indiana, Pennsylvania, Georgia, and Illinois.

I served as project engineer on approximately 300 mining-related landslides, drainage control projects, coal refuse fires, underground mine subsidence, and mine fire emergency projects. I evaluated causes of landslides and designed remedial construction measures that included control of storm water runoff for approximately 200 landslides. I also provided technical assistance to Office of Surface Mining field offices regarding valley fill construction, coal waste disposal, subsidence control, storm water runoff control, and landslide stabilization. I served as an expert witness regarding surface and underground mine operations, valley fill construction, storm water runoff control, landslide stabilization, subsidence and roof control, coal mine reclamation, and surface and underground mine safety regulations in federal court hearings in West Virginia, Kentucky, and Virginia.  I taught mining and civil engineering classes about methods used to abate mining hazards.

I also taught geotechnical engineering methods to mine inspectors and project managers regarding stabilization of earth and rock fill structures. I managed a training program for inspectors and engineers in hydrology and storm water runoff control.

6)   **Reclamation Supervisor, GS-13**                   **4/78 to 3/82**

**Employer**                                                          **Supervisor**

**Office of Surface Mining**                               **Richard Hall**
**U.S. Department of Interior**
**Washington, D.C. 20240**

## Duties and Accomplishments

I supervised inspection and enforcement programs and regulation of surface and underground mining operations on a regional and national level. I wrote regulations for the permanent program for the construction of coal waste embankments, subsidence control, drainage control of surface and underground mine storm water runoff, valley fill construction and stability requirements, contour mining, mountaintop removal mining, and backfilling and grading on surface mines.

I served as an expert witness in administrative and federal court hearings in West Virginia, Pennsylvania, Virginia and Kentucky. I served as an expert witness regarding mine safety standards, ventilation, roof control and mine subsidence, groundwater movement, coal waste treatment, coal waste dam construction, earth and rock fill design

and construction, geotechnical engineering, landslides, surface mine storm water runoff control, surface water movement related to underground mining operations, and reclamation. I evaluated causes of landslides and designed remedial stabilization measures.

I authored papers on construction of earth-and rock fill coal waste embankments. I served as assistant to the director of Inspection and Enforcement in Washington, D.C. I wrote policy directives and supervised the national interim surface and underground mining inspection program. I managed tracking systems for violators and provided guidance to field managers regarding enforcement.

I served as district manager in Pennsylvania and West Virginia. I managed a nationwide training program for new inspectors and managers regarding inspection techniques at surface and underground mining facilities. I taught mining reclamation procedures for storm water runoff control facilities, coal waste embankments, excess mine spoil fills, and haulage road construction.

| | |
|---|---|
| **7)  Division Chief** | **3/73 to 4/78** |
| **Employer** | **Supervisor** |
| **Coal Refuse and Dam Control Division** <br> **WV Department of Natural Resources** <br> **Charleston, WV 25321** | **Ira Latimer** |

### Duties and Responsibilities

I was responsible for development of safety criteria for coal waste embankment construction, dam construction, landslide stabilization, excess mine spoil fills, and surface and underground mine drainage systems for the state of West Virginia. More than 1,500 coal waste embankments and dams were evaluated for safety. I issued enforcement documents to mine owners and supervised an inspection and compliance program for surface and underground mines.

I managed a statewide inspection and enforcement program with a staff of civil and mining engineers, geologists and reclamation specialists. I was also responsible for the review, approval, and inspection of storm water runoff control facilities for surface mines, coal preparation facilities, and surface areas of underground mines.

I taught seminars to train mine inspectors and engineers. I taught on the subjects of slope stabilization procedures for coal tailings areas, waste piles and dams, excess mine spoil fills, hydrology, and design of storm water runoff control structures. I taught all staff about the basics of geotechnical engineering as related to the mining environment. I managed a statewide training program for all dam and waste pile inspectors. I cross-trained all personnel in basic engineering and hydrology pertaining to earth and coal-related structures.

8)  **Staff Engineer**                                         3/72 to 10/72

<u>**Employer**</u>                                                <u>**Supervisor**</u>

**Governor's Commission of Inquiry**                  Ira Latimer
**Into the Buffalo Creek Flood**
**Of February 1972**
**Charleston, WV 25321**

<u>**Duties and Accomplishments**</u>

I wrote the final report regarding the failure of a coal waste dam in February 1972 that
killed 125 people in Logan County, West Virginia. I assembled and evaluated
geotechnical engineering and hydrologic data regarding the construction and sudden
failure of the dam. I interviewed witnesses and briefed commission members before
hearings. I prepared
recommendations for coal refuse and dam control regulations that were enacted into law
in West Virginia.

9)  **Mining Research Engineer**                          1/71 to 3/72

<u>**Employer**</u>                                                <u>**Supervisor**</u>

**Coal Research Bureau**                                  James Stump
**West Virginia University**
**School of Mines**
**Morgantown, WV 26505**

<u>**Duties and Accomplishments**</u>

I taught surface and underground mine design, haulage, roof control, ventilation,
subsidence control, mineral preparation, and surveying. I conducted research projects in
abatement of surface and underground acid mine drainage. This research included
analysis of mine water and evaluation of treatment facilities and mine plans to abate acid
drainage. I wrote reports about my research regarding the development of mine plans to
reduce the possibility of acid drainage formation.

**10) Mining Engineer**                                  **5/70 to 1/71**

**Employer**                                             **Supervisor**

Semet Solvey Division                                    Charles Bowling
Allied Chemical Corporation
Montgomery, WV 25136

**Duties and Accomplishments**

I worked as a mining engineer in the design of surface and underground mining
operations. I developed roof control and ventilation plans and designed valley fills, dams,
and sediment control plans. I worked in underground continuous miner sections.

**11) Mining Engineer in Training**                      **6/66 to 5/70**

**Employer**                                             **Supervisor**

U.S. Bureau of Mines (now MSHA)                          William Park
Mount Hope and Morgantown, WV

**Duties and Accomplishments**

I assisted in training in the areas of roof control, mine ventilation, and coal mine health
and safety. I was part of a team that inspected underground mining operations and
surface-related facilities to determine compliance with federal health and safety laws. I
conducted investigations of fatal roof falls and other accidents in underground coal
mines. I conducted ventilation and dust surveys.

## Education

Bachelor of Science – Mining Engineering
West Virginia University, 1970

Mount Hope High School, 1966
Salutatorian

## Awards/Accomplishments

1991 – Instructor Training, Office of Surface Mining, U.S. Department of Interior
1991 – Meritorious Service Award, Secretary of the Interior
1991 – Impoundment Inspector Certificate, MSHA, U.S. Department of the Interior
1993 – Engineer of the Year Award, U.S. Department of the Interior
2004 – Jenco Foundation Award for Service to Humanity in Appalachia
2004 – Chuck Chambers Public Service Award, W.Va. Environmental Council
2005 – Helen Lewis Community Service Award, Appalachian Studies Association
2006 – First Amendment Award Regarding the 2000 Martin County Dam Failure
2010 – Lifetime Achievement Award, Union of Concerned Scientists
2012 – Conservation Achievement Award, National Wildlife Federation

E-FILED | 3/24/2022 11:06 AM
CC-41-2021-C-353
Raleigh County Circuit Clerk
Paul H. Flanagan

IN THE CIRCUIT COURT OF RALEIGH COUNTY, WEST VIRGINIA

CHARLES NELSON,

     Plaintiff,

v.                             CIVIL ACTION NO. 21-C-353
                                  The Honorable Judge Andrew Dimlich

MARFORK COAL COMPANY, LLC;
MAXXIM SHARED SERVICES, LLC;
CONTURA ENERGY, INC. k/n/a
ALPHA METALLURGICAL RESOURCES, INC.,

     Defendants.

## AMENDED COMPLAINT

NOW COMES the Plaintiff Charles Nelson, by counsel, Warner Law Offices, PLLC, Robert B. Warner and Andrew D. Byrd, pursuant to Rule 15 of the West Virginia Rules of Civil Procedure, and for his Amended Complaint against the Defendants Marfork Coal Company, LLC, Maxxim Shared Services, LLC, Contura Energy, Inc. and Alpha Metallurgical Resources, Inc., alleges and avers as follows:

1.     The Plaintiff, Charles Nelson is and was at all times relevant hereto, a resident of Wayne County, West Virginia.

2.     Upon information and belief, Defendant Marfork Coal Company, LLC is a West Virginia limited liability company with a principal office address of 370 Packsville/Marfork Road, Whitesville, West Virginia 25209. Marfork Coal Company, LLC is authorized to do and does do business in Raleigh County, West Virginia.

3.     Upon information and belief, Defendant Maxxim Shared Services, LLC, is a Delaware corporation with a principal office address of 340 Martin Luther King, Jr., Blvd., Bristol

Tennessee, 37620. Maxxim Shared Services, LLC is authorized to do and does do business in Raleigh County, West Virginia.

4.      Upon information and belief, Defendant Contura Energy, Inc., is a Delaware corporation with a principal office address of 340 Martin Luther King, Jr., Blvd., Bristol Tennessee, 37620. Contura Energy, Inc. is authorized to do and does do business in Raleigh County, West Virginia.

5.      Upon information and belief, Defendant Alpha Metallurgical Resources, Inc., is a Delaware corporation with a principal office address of 340 Martin Luther King, Jr., Blvd., Bristol Tennessee, 37620. Alpha Metallurgical Resources, Inc. is authorized to do and does do business in Raleigh County, West Virginia.

6.      Upon information and belief, the incident which forms the basis of this Amended Complaint occurred at the Panther Eagle underground coal mine (hereinafter "Panther Eagle Mine") located in Raleigh County, West Virginia.

7.      This Court has jurisdiction over the parties and venue is appropriate in accordance with West Virginia Code § 23-4-2(e).

## GENERAL ALLEGATIONS

8.      Prior to December 12, 2019, Plaintiff Charles Nelson became employed as a non-supervisory employee by Defendant Marfork Coal Company, LLC, as a shuttle car operator at the Panther Eagle Mine in Raleigh County, West Virginia.

9.      On or about December 12, 2019, in the course and scope of his employment with Defendant Marfork Coal Company, LLC, Mr. Nelson was operating a shuttle car in the #6 Entry of the Panther Eagle Mine.  As directed by his immediate supervisor, Mr. Nelson was tasked with moving the anchor/cable of the shuttle car from the #6 Entry to the first intersection.

10.     While Mr. Nelson was getting out of his shuttle car to continue moving the anchor/cable, a co-worker operating another shuttle car came through the fly pads between the #5 Entry and the #6 Entry, striking Mr. Nelson and the shuttle car.  The force of the collision knocked Mr. Nelson nearly ten (10) feet from the shuttle car onto the mine floor.

11.     As a result, Mr. Nelson suffered severe and permanent physical injuries to his head, neck, right shoulder, right arm, back, left leg, right leg and right foot, as well as, permanent mental injuries.

### COUNT I – DELIBERATE INTENT
### (MARFORK COAL COMPANY, LLC)

12.     Plaintiff incorporates by reference all previous paragraphs to this Amended Complaint as if fully restated herein.

13.     At all times relevant hereto, Plaintiff Charles Nelson was an employee of Defendant Marfork Coal Company, LLC.

14.     At all times relevant hereto, Plaintiff Charles Nelson was operating a shuttle car and performing tasks as directed from his immediate supervisor at the Panther Eagle Mine in Raleigh County, West Virginia.

15.     The conduct of Defendant Marfork Coal Company, LLC constitutes "deliberate intention" as set forth in West Virginia Code §23-4-2(d)(2)(B).

16.     On and before December 12, 2019, specific unsafe working conditions existed at the workplace of Plaintiff Charles Nelson that presented a high degree of risk and strong probability of serious injury or death, including but not necessarily limited to the fact that Plaintiff Charles Nelson was required to operate a shuttle car and perform tasks in the Panther Eagle Mine where his employer: failed to ensure that adequate task training had been provided to the shuttle car operator who collided with Mr. Nelson; failed to remove an unsafe shuttle car with defective

brakes from service; failed to properly inspect and repair shuttle cars being operated in the Panther Eagle Mine with known safety defects; and failed to take corrective action regarding the shuttle car operator who collided with Mr. Nelson - who had exhibited a reckless disregard for the safety of other miners on the working section by operating the shuttle car at high speeds and without regard to the locations of other miners.

17.    Prior to Plaintiff Charles Nelson's injury, Defendant Marfork Coal Company, LLC had actual knowledge of the specific unsafe working conditions, and the high degree of risk and strong probability of serious injury or death presented by the unsafe conditions by virtue of the fact that miners at the Panther Eagle Mine had made prior safety complaints to immediate supervisors and management personnel and by virtue of the fact that Defendant Marfork Coal Company, LLC had knowledge of prior similar accidents and near misses.

18.    The actual knowledge of Defendant Marfork Coal Company, LLC is further evidenced, in part, by its deliberate and intentional failure to conduct an inspection, audit or assessment required by state and federal safety statutes (i.e. MSHA and WVOMHST) which are specifically intended to identify and alleviate the alleged specific unsafe working conditions.

19.    At the aforesaid time and place, said specific unsafe working conditions were a violation of state and federal safety statutes, rules and regulations, including but not necessarily limited to, 30 CFR § 48.7, 30 CFR § 75.360, 30 CFR § 75.362, 30 CFR § 75.363, 30 CFR § 75.512, 30 CFR § 75.1725, W.Va. Code § 22A-2-14, W.Va. CSR § 36-4-1, W.Va. CSR § 36-12-4.1.20, and W.Va. CSR § 36-18-4, which are specifically applicable to the work and working conditions involved and intended to identify and alleviate the specific hazards presented by the specific unsafe working conditions.[1]

---

[1] A verified statement, as required by W.Va. Code § 23-4-2(d)(2)(C), is attached hereto as "**Exhibit 1**."

20.     Notwithstanding the existence of the aforementioned specific unsafe working conditions, all of which Defendant Marfork Coal Company, LLC had actual knowledge, and which violated MSHA regulations and West Virginia law, Defendant Marfork Coal Company, LLC nevertheless deliberately and intentionally exposed Plaintiff Charles Nelson to these specific unsafe working conditions.

21.     As a direct and proximate result of the acts of Defendant Marfork Coal Company, LLC, and exposure to the aforementioned specific unsafe working conditions, Plaintiff Charles Nelson suffered severe injuries, tremendous pain and suffering, permanent bodily injury, as well as loss of the ability to perform household services, loss of the ability to enjoy life, lost wages, loss of future earning capacity, humiliation, embarrassment, annoyance, aggravation, mental anguish and inconvenience, as well as other economic and non-economic damages which he will in all likelihood continue to suffer into the foreseeable future.[2]

## COUNT II – NEGLIGENCE
## (MAXXIM SHARED SERVICES, LLC)

22.     Plaintiff incorporates by reference all previous paragraphs to this Amended Complaint as if fully restated herein.

23.     Upon information and belief, during the relevant time periods herein, Defendant Maxxim Shared Services, LLC provided mine safety, engineering, equipment transfers and other support services to Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc.'s subsidiary mine operators, including the Panther Eagle Mine in which Plaintiff Charles Nelson was working at the time of the subject incident.

---

[2] Plaintiff states that pursuant to W.Va. Code § 23-4-2(d)(2)(B)(v)(I)(a), an award in the Plaintiff Charles Nelson's worker's compensation claim was entered on April 14, 2021, wherein the Plaintiff was granted an eleven percent (11%) permanent partial disability award and on February 25, 2022, wherein the Plaintiff was granted a five percent (5%) permanent partial disability award - for a total sixteen percent (16%) permanent partial disability award.

24.     Defendant Maxxim Shared Services, LLC owed a duty to provide coal miners, including Plaintiff Charles Nelson, with reasonably safe work environment, safe mining equipment and to adopt and implement safe mining practices and procedures in conformity with federal and state mining laws and regulations.

25.     Upon information and belief, through its involvement in safety and support measures for Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc. subsidiaries and the mines they operated, Defendant Maxxim Shared Services, LLC had a duty to ensure that coal at the Panther Eagle Mine was mined in compliance with federal and state mining laws and regulations.

26.     Defendant Maxxim Shared Services, LLC breached its duty of care owed to Plaintiff Charles Nelson by: failing to provide reasonable and prudent safety monitoring and oversight to ensure compliance with all federal and state mine safety rules, regulations and statutes at the Panther Eagle Mine; failing to ensure that adequate task training had been provided to shuttle car operators; failing to remove unsafe shuttle cars with defective brakes from service; failing to properly inspect and repair shuttle cars being operated in the Panther Eagle Mine with known safety defects; and failing to take corrective action regarding shuttle car operators who had exhibited a reckless disregard for the safety of other miners.

27.     Defendant Maxxim Shared Services, LLC breached its duty of care owed to Plaintiff Charles Nelson by engaging in conscious, reckless and outrageous indifference to the health, safety and welfare of the miners at the Panther Eagle Mine.

28.     As a direct and proximate result of Defendant Maxxim Shared Services, LLC's breach of its duty of care to Plaintiff Charles Nelson, he suffered severe injuries, tremendous pain and suffering, permanent bodily injury, as well as loss of the ability to perform household services,

6

loss of the ability to enjoy life, lost wages, loss of future earning capacity, humiliation, embarrassment, annoyance, aggravation, mental anguish and inconvenience, as well as other economic and non-economic damages which he will in all likelihood continue to suffer into the foreseeable future.

29.     As a direct and proximate result of the negligent, careless, and reckless acts and/or omissions of Defendant Maxxim Shared Services, LLC, its employees, agents and representatives, Plaintiff Charles Nelson asserts claims for both compensable and punitive damages.

## COUNT III – NEGLIGENCE
### (CONTURA ENERGY, INC. and/or ALPHA METALLURGICAL RESOURCES, INC.)

30.     Plaintiff incorporates by reference all previous paragraphs of this Amended Complaint as if fully restated herein.

31.     Upon information and belief, during the relevant time periods herein, Defendant Marfork Coal Company, LLC was and continues to be a subsidiary of Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc., the controller of the Panther Eagle Mine, as reported to the U.S. Department of Labor, Mine Safety and Health Administration.

32.     Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc., owed Plaintiff Charles Nelson the duty to provide him with a reasonably safe working environment, including, but not limited to, a mine where adequate task training is provided to the shuttle car operators; a mine where unsafe shuttle cars with defective brakes are removed from service; a mine that properly inspects and repairs shuttle cars being operated in it with known safety defects; and a mine that takes corrective action regarding the shuttle car operators who exhibit a reckless disregard for the safety of other miners.

33.     The establishment of Defendant Marfork Coal Company, LLC did not change or alleviate Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc.'s

basic compliance responsibilities with the federal Mine Safety and Health Act and other applicable state and federal statutes and regulations. Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc., was responsible for compliance of the Panther Eagle Mine with all applicable provisions of the Federal Mine Safety and Health Act and other applicable state and federal statutes and regulations.

34. It was reasonably foreseeable to Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc. that the failure of its subsidiaries to adequately task train its shuttle car operators; to remove from service unsafe shuttle cars with defective brakes; to properly inspect and repair shuttle cars being operated with known safety defects; and to take corrective action regarding shuttle car operators who exhibit a reckless disregard for the safety of other miners would result in serious injury and/or death.

35. Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc. breached its duty of care owed to Plaintiff Charles Nelson by engaging in conscious, reckless and outrageous indifference to the health, safety and welfare of the miners at the Panther Eagle Mine.

36. As a direct and proximate result of Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc.'s breach of its duty of care to Plaintiff Charles Nelson, he suffered severe injuries, tremendous pain and suffering, permanent bodily injury, as well as loss of the ability to perform household services, loss of the ability to enjoy life, lost wages, loss of future earning capacity, humiliation, embarrassment, annoyance, aggravation, mental anguish and inconvenience, as well as other economic and non-economic damages which he will in all likelihood continue to suffer into the foreseeable future.

37.     As a direct and proximate result of the negligent, careless, and reckless acts and/or omissions of Defendant Contura Energy, Inc., and/or Defendant Alpha Metallurgical Resources, Inc., its employees, agents and representatives, Plaintiff Charles Nelson asserts claims for both compensable and punitive damages.

**WHEREFORE**, the Plaintiff, Charles Nelson, by counsel, demands judgment against the Defendants Marfork Coal Company, LLC, Maxxim Shared Services, LLC, Contura Energy, Inc., and Alpha Metallurgical Resources, Inc., in an amount exceeding the jurisdictional minimum requirements of this Court, and in such sums as will fairly and fully compensate Mr. Nelson for his injuries, losses and damages, together with pre and post judgment interest, reasonable attorney fees and costs in and about the prosecution of this action.   Plaintiff, by counsel, additionally demands judgment against Defendants Maxxim Shared Services, LLC, Contura Energy, Inc., and Alpha Metallurgical Resources, Inc., which is punitive in nature and is sufficient to punish these Defendants for their willful, wanton, and reckless disregard for the health, safety and welfare of the Plaintiff and others like him and to deter like conduct in the future, together with any and all further relief in favor of the Plaintiff that this Court deems just under the circumstances.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**CHARLES NELSON**
**By Counsel:**

*/s/ Robert B. Warner*
Robert B. Warner (WVSB #7905)
Andrew D. Byrd (WVSB #11068)
WARNER LAW OFFICES, PLLC
227 Capitol Street
Post Office Box 3327
Charleston, West Virginia 25333
Telephone: (304) 345-6789
Facsimile: (304) 344-4508
*bwarner@wvpersonalinjury.com*
*abyrd@wvpersonalinjury.com*

9

# Exhibit 1

## VERIFIED STATEMENT OF JACK SPADARO
## PURSUANT TO W.Va. CODE § 23-4-2(d)(2)(C)

I, Jack Spadaro, being duly sworn, hereby depose and say as follows:

1.  I am over the age of eighteen years, am not incarcerated and have not been adjudicated incompetent.

2.  As a former MSHA inspector, I have knowledge and expertise of the applicable workplace safety statutes, rules, regulations and/or written consensus industry safety, including but not limited to, those mining activities that fall under the Mine Safety and Health Administration (MSHA) and the West Virginia Office of Miners Health Safety and Training ("WVOMHST"). I have served as the Superintendent of the U.S, Department of Labor's National Mine Health & Safety Academy and as a mine safety consultant for labor unions, coal companies, and other organizations involved in mining health and safety on a national basis. I have extensive knowledge and expertise regarding the applicability of the workplace safety statutes, rules, regulations and/or written consensus industry safety standards that governed Charles E. Nelson's workplace and work assignments at the time of his serious injuries. A copy of my curriculum vitae, setting forth my education, training, and experience in surface and underground coal mining operations and regulations is attached hereto as **"Exhibit A."**

3.  Upon review of the preliminary facts in the matter of *Charles E. Nelson v. Marfork Coal Company, LLC et al.,* the specific unsafe working conditions that existed on and before December 12, 2019 at the Panther Eagle Mine, included, but are not necessarily limited to the: failure to ensure that adequate task training had been provided to the shuttle car operator who collided with Mr. Nelson; failure to remove an unsafe shuttle car with defective brakes from service; failure to properly inspect and repair shuttle cars being operated in the Panther Eagle Mine with known safety defects; and failure to take corrective action regarding the shuttle car operator who collided with Mr. Nelson - who had exhibited a reckless disregard for the safety of other miners on the working section by operating the shuttle car at high speeds and without regard to the locations of other miners.

4.  At this time, the specific statutes, rules, regulations or written consensus industry safety standards violated by the employer that are directly related to the above-referenced specific unsafe working conditions and were the cause of Charles E. Nelson's serious injuries are:

    - 30 CFR § 48.7
    - 30 CFR § 75.360
    - 30 CFR § 75.362
    - 30 CFR § 75.363
    - 30 CFR § 75.512
    - 30 CFR § 75.1725
    - W.Va. Code § 22A-2-14
    - W.Va. CSR § 36-4-1
    - W.Va. CSR § 36-12-4.1.20, and

- W.Va. CSR § 36-18-4.

And further this Affiant saith not.

_Jack Spadaro_

Jack Spadaro

STATE OF WEST VIRGINIA,

COUNTY OF Kanawha , TO-WIT:

I, Tara S. Chandler , a Notary Public in and for the State and County aforesaid,

do hereby certify that Jack Spadaro, whose name is signed to the above Affidavit, has this day

acknowledged the same before me in my said State and County.

Given under my hand this 29th day of November , 2021.

My commission expires May 14, 2025.

[SEAL]

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
TARA S CHANDLER
Warner Law Offices, PLLC
P.O. Box 3327
Charleston, WV 25333
My Commission Expires May 14, 2025

Notary Public

# EXHIBIT B

2013 WL 4829322

2013 WL 4829322
Only the Westlaw citation is currently available.
United States District Court, S.D. West Virginia.

Sheena HUNT, Individually and
as the Administratrix of the Estate
of Russell Aaron Hunt, Plaintiff,

v.

BROOKS RUN MINING
COMPANY, LLC, Defendant.

Civil Action No. 1:13–0433.
|
Sept. 10, 2013.

**Attorneys and Law Firms**

James R. Akers, II, Akers Law Offices, Charleston, WV,
Stephen P. New, Beckley, WV, for Plaintiff.

Andrew Steven Felts, Gretchen M. Callas, Jackson Kelly,
Charleston, WV, David Z. Myerberg, Jackson Kelly,
Morgantown, WV, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

DAVID A. FABER, Senior District Judge.

 **\*1** Pending before the court is plaintiff's motion to remand.
Doc. No. 5. For the reasons set forth below, the motion is
denied.

### I. Factual and Procedural Background

On December 7, 2012, in the Circuit Court of McDowell
County, West Virginia, plaintiff Sheena Hunt filed a deliberate
intent action against defendant Brooks Run Mining Company,
LLC ("Brooks Run") arising out of the death of her husband,
Russell Aaron Hunt. On January 9, 2013, Brooks Run
removed the case to this court on the basis of diversity
of citizenship. Plaintiff Hunt is a resident and citizen of
McDowell County, West Virginia. *See* Complaint ¶ 1. Brooks
Run is a Delaware limited liability company. *See* Notice of
Removal ¶ 8. The two sole members of Brooks Run are
AMFIRE, LLC, and AMFIRE WV, L.P. *See id.* at ¶ 9.

AMFIRE, LLC, is a Delaware limited liability company
whose sole member is Maxxum Carbon Resources, LLC. *See
id.* Maxxum Carbon Resources, LLC, is a Delaware limited
liability company whose sole member is Alpha Natutral
Resources, LLC. *See id.* Alpha Natural Resources, LLC, is
a Delaware limited liability company whose sole member
is Alpha Natural Resources, Inc. ("Alpha"). *See id.* Alpha
is a Delaware corporation with, according to the Notice of
Removal, its principal place of business in Bristol, Virginia.
*See id.*

AMFIRE WV, L.P. has two partners: AMFIRE, LLC and
AMFIRE Holdings, LLC. *See id.* AMFIRE Holdings, LLC
is a Delaware limited liability company with its principal
place of business in Bristol, Virginia. *See id.* The sole
member of AMFIRE Holdings, LLC is AMFIRE LLC, the
citizenship of which is discussed above. Accordingly, based
on the foregoing, Brooks Run contends that it is a citizen of
Delaware and Virginia for purposes of diversity jurisdiction.

Plaintiff has filed a motion to remand this case to the Circuit of
Court of McDowell County. She argues that "Brooks Run is
directed, controlled, coordinated, and substantially operated
in the State of West Virginia." *See* Motion to Remand p. 1.
According to plaintiff, "[t]here is at least an issue of fact" as to
whether Alpha's principal place of business is in West Virginia
and, therefore, diversity is lacking. *Id.* at 5.

### II. Analysis

Federal district courts may exercise diversity jurisdiction over
civil actions in which the matter in controversy exceeds
the sum or value of $75,000.00 and is between citizens of
different states. *See* 28 U.S.C. § 1332(a)(1). Title 28
United States Code Section 1441, known as the "removal
statute," provides that a case filed in state court may
be removed to federal court when it is shown by the
defendant that the federal court has original jurisdiction. *See*

 *Mulcahey v. Columbia Organic Chems. Co.,* 29 F .3d 148,
151 (4th Cir.1994). The phrase "between citizens of different
states" has been interpreted as requiring "complete diversity,"
i.e., the citizenship of each plaintiff must be diverse from the
citizenship of each defendant. *Caterpillar Inc., v. Lewis,*
519 U.S. 61, 68 (1996)(citing *Strawbridge v. Curtiss,* 7
U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).

**\*2** It is well established that the party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied, *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir.1994)(citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921)), and that any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand, *Mulcahey,* 29 F.3d at 151 (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100 (1941)).

For purposes of diversity jurisdiction, an unincorporated association, such as a limited liability company, is deemed to be a citizen of each state in which its members are citizens. *Gen. Tech. Applications, Inc. v. Exro Ltda.,* 388 F.3d 114, 120 (4th Cir .2004); *see also Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC,* 636 F.3d 101, 103 (4th Cir.2011) ("For purposes of diversity jurisdiction, the citizenship of a limited liability company ... is determined by the citizenship of all its members...."). Therefore, "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." *Meyerson v. Harrah's East Chicago Casino,* 299 F.3d 616, 617 (7th Cir.2002).

Furthermore, the principal place of business of test applicable to corporate citizenship does not apply to a limited liability company, such as Brooks Run. *See Laudermilt v. Taggart Global, LLC,* Civil Action No. 1:11–0288, 2012 WL 4018286, \*1 n. 2 (S.D.W.Va. Sept. 12, 2012); *see also Gen. Tech. Applications, Inc.,* 388 F.3d at 121 ("A limited liability company organized under the laws of a state is not a corporation and cannot be treated as such under section 1332 until Congress says otherwise."). Accordingly, plaintiff's efforts to establish that Brooks Run's principal place of business is located in West Virginia is misguided, see Motion to Remand at pp. 1–2, because Brooks Run's principal place of business is irrelevant to the court's inquiry herein.

The sole corporate entity identified as a member or submember of Brook Run is Alpha. Alpha is incorporated in Delaware. However, a corporation is also a citizen "of the State where it has its principal place of business." 28 U.S.C.A. § 1332(c)(1). Title 28 United States Code Section 1332(c)(1) states that "a corporation shall be deemed

to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." Plaintiff contends that Alpha's citizenship is in question here because, according to her, Alpha's principal place of business is in West Virginia based upon its significant operations in that state.

In the past, the Fourth Circuit used two tests to determine a corporation's principal place of business: the "nerve center test" and the "place of operations test." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC,* 636 F.3d 101, 103 (4th Cir.2011). However, in 2010, in an effort to resolve the differing interpretation given the phrase "principal place of business" by the lower courts, the Supreme Court made clear that " 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend,* 559 U.S. 77, 80 (2010); *see also Cent. W. Va. Energy Co.,* 636 F.3d at 107 ("In sum, the touchstone now for determining a corporation's principal place of business for diversity purposes is 'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.' ") (internal citations omitted). Elaborating, the Supreme Court noted that this is commonly referred to as the corporation's "nerve center" and "will typically be found at a corporation's headquarters." *Hertz,* 559 U.S. at 80–81.

**\*3** Brooks Run has alleged that Alpha's principal place of business is in Virginia. In support thereof, it has offered the affidavit of Frank J. Wood, the Executive Vice President and Chief Financial Officer of Alpha. *See* Affidavit of Frank J. Wood, February 22, 2013, (hereinafter "Wood Aff. at ¶ ——"). According to Mr. Wood, Alpha's principal executive office, as of January 8, 2013, was located in Bristol, Virginia. *See* Wood Aff. ¶ 3. Mr. Wood also states that the business addresses for himself and the following Alpha officers are located in Bristol, Virginia: the Chairman and Chief Executive Officer; the President; the Executive Vice President & Chief Strategy Officer; the Senior Vice President & Chief Human Resources Officer; the Executive Vice President, General Counsel & Secretary; the Senior Vice President, Communications & Government Affairs; and the Executive Vice President & Chief Commercial Officer. *See id.* at ¶¶ 4–11. Wood further contends that all of Alpha's "activities are directed, controlled, and coordinated by the aforementioned officers and directors from Alpha Natural Resources, Inc.'s corporate headquarters in Bristol, Virginia." *Id.* at ¶ 12. Furthermore, according to Wood's affidavit, Alpha's books

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

and records are maintained at its corporate headquarters in Virginia and all of Alpha's financial, tax, and accounting functions are performed there as well. *See id.* at ¶¶ 13–14. Based upon the foregoing, the court concludes that the Alpha's "nerve center" is located in Virginia and, therefore, for purposes of diversity, Virginia is Alpha's principal place of business.[*]

In her efforts to persuade the court that Alpha's principal place of business is in West Virginia, plaintiff directs the court to Alpha's website which lists a number of offices in West Virginia. According to plaintiff, given "the overwhelming number of its offices are in West Virginia, it may reasonably be inferred that Alpha's officers direct, control, and coordinate the corporation's activities to a substantial extent in West Virginia." Motion to Remand at p. 5. Plaintiff's argument is without merit. She concedes that the same website notes that Alpha's corporate headquarters is located in Virginia. Furthermore, her conclusory allegations are not sufficient to call into question Wood's Affidavit which states that all of Alpha's "activities are directed, controlled, and coordinated by the aforementioned officers and directors from Alpha Natural Resources, Inc.'s corporate headquarters in Bristol,

Virginia." Wood Aff. at ¶ 12. While plaintiff's focus on Alpha's significant operations in West Virginia might have been relevant under the "place of operations test," it is "not germane to the 'nerve center' test as laid out in Hertz." *Cent. W. Va. Energy Co.,* 636 F.3d at 107.

Accordingly, given that neither Brooks Run nor any of its members is a citizen of West Virginia, complete diversity exists.

### III. Conclusion

**\*4** For the aforementioned reasons, the court hereby **DENIES** plaintiff's motion to remand. Doc. No. 5. The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is **SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2013 WL 4829322

### Footnotes

[*] In a decision predating Hertz, this court previously found that Alpha's "nerve center" is located in Virginia. *See Paitsel v. Brooks Run Mining Co., LLC,* Civil Action No. 1:08–00794, Memorandum Opinion and Order of August 12, 2008, at p. 7; *see also Bledsoe v. Brooks Run Mining Co., LLC,* Civil Action No. 5:11–00464, 2011 WL 5360042, *1 n. 3 (S.D.W.Va. Nov. 4, 2011) ("Brooks Run's members are not residents of West Virginia. Accordingly, to the extent Plaintiff's motion to remand relies on Brooks Run being a resident of West Virginia, it is denied.") (Berger, J.).

**End of Document**   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

**CHARLES NELSON,**

     **Plaintiff,**

**v.**                                                    **CIVIL ACTION NO._____
JUDGE_____**

**MARFORK COAL COMPANY, LLC;
MAXXIM SHARED SERVICES, LLC;
CONTURA ENERGY, INC. k/n/a
ALPHA METALLURGICAL RESOURCES, INC.,**

     **Defendants**.

## AFFIDAVIT OF ROGER L. NICHOLSON

Now comes the affiant, Roger L. Nicholson, and being duly sworn states as follows:

1. I am Roger L. Nicholson, Executive Vice President, Chief Administrative Officer, General Counsel and Secretary of Alpha Metallurgical Resources, Inc.;

2. As Executive Vice President, Chief Administrative Officer, General Counsel and Secretary, I am familiar with the corporate structure and ownership interest of Marfork Coal Company, LLC ("Marfork"), Maxxim Shared Services, LLC ("Maxxim"), Contura Energy, Inc. and Alpha Metallurgical Resources, Inc.;

3. The sole member of Marfork is Elk Run Coal Company, LLC.

    (a) Elk Run Coal Company, LLC's sole member is Appalachia Holding Company, LLC;

    (b) Appalachia Holding Company, LLC's sole member is Alpha Appalachia Holdings, LLC;

    (c) Alpha Appalachia Holdings, LLC's sole member is ANR, Inc.;

(d) ANR, Inc. is a Delaware corporation with its principal place of business in Bristol, Tennessee.

4. The sole member of Maxxim is Alpha Natural Resources Services, LLC.

    (a) Alpha Natural Resources Services, LLC's sole member is Alpha Natural Resources, LLC;

    (b) Alpha Natural Resources, LLC's sole member is ANR, Inc.;

    (c) ANR, Inc. is a Delaware corporation with its principal place of business in Bristol, Tennessee;

5. Contura Energy, Inc. is now known as Alpha Metallurgical Resources, Inc. due to a name change filed on February 1, 2021. Prior to its name change, Contura Energy, Inc. was a Delaware corporation with its principal place of business in Bristol, Tennessee. As it is now known, it remains a Delaware corporation with its principal place of business in Bristol, Tennessee.

6. Alpha Metallurgical Resources, Inc. was formerly known as Contura Energy Inc. and is a Delaware corporation with its principal place of business in Bristol, Tennessee.

And further affiant sayeth naught.

_Roger L. Nicholson_
ROGER L. NICHOLSON

STATE OF WEST VIRGINIA

COUNTY OF BOONE:

    Taken, subscribed and sworn to before me, the undersigned authority, this _25_ day of April, 2022.

    My commission expires _December 4, 2026_ .



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Claire S Vaught
PO Box 416
Danville WV 25053
My Commission Expires December 4, 2026

NOTARY PUBLIC

# EXHIBIT D

Pack v. S&S Firestone, Inc., Not Reported in Fed. Supp. (2014)

Case 5:22-cv-00200 Document 1-1 Filed 04/25/22 Page 58 of 64 PageID #: 68

2014 WL 12625463

2014 WL 12625463
Only the Westlaw citation is currently available.
United States District Court, S.D. West Virginia,
Beckley Division.

Clayton E. PACK, Plaintiff,
v.
S&S FIRESTONE, INC. d/b/a Best
One Tire and Service; and Richard
White, Individually, Defendants.

CIVIL ACTION NO. 5:14-cv-17286
|
Signed 08/27/2014

**Attorneys and Law Firms**

Richard W. Walters, Shaffer & Shaffer, Charleston, WV, for
Plaintiff.

Brian J. Moore, Jennifer Jo Hicks, Dinsmore & Shohl,
Charleston, WV, for Defendants.

### MEMORANDUM OPINION AND ORDER

IRENE C. BERGER, UNITED STATES DISTRICT JUDGE

**\*1** The Court has reviewed the Plaintiff's *Motion to Remand*
(Document 7) and accompanying *Memorandum in Support*
(Document 8), as well as the *Defendant's Response to
Plaintiff's Motion to Remand* (Document 10). For the reasons
stated herein, the Court finds that the Plaintiff's motion to
remand should be denied because Defendant Richard White
was fraudulently joined, and therefore, this Court enjoys
subject matter jurisdiction.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Clayton E. Pack (Mr. Pack) was "employed as
a tire technician for Defendant S&S Firestone, d/b/a Best
One Tire and Service ... and its predecessors for over 30
years." (Document 8 at 1.) His supervisor, Defendant Richard
White, was also the store manager at Best One Tire and
Service. (*Id.*) In May of 2012, the Plaintiff took time off
work to undergo hernia surgery, returning to work on or
about June 11, 2012. (*Id.* at 1-2.) The Plaintiff's "employment
was terminated by the defendants ... due to cut backs" on

December 3, 2012. (*Id.* at 2.) He was "further advised by
defendant White that the termination was temporary but could
last up to six months. However, within a few months of his
termination, another employee of the defendant quit. Instead
of calling plaintiff back, the defendant White hired a new,
much younger individual." (*Id.*) The Plaintiff was 57 years
old at the time of his firing. (*Id.*) He allegedly was not
"provide[d] ... with his final paycheck within seventy-two
(72) hours." (*Id.*)

As a result, the Plaintiff initiated suit in the Circuit Court
of Raleigh County, West Virginia, on March 21, 2014. (See
*Complaint*, Document 1-1 at 5.) His complaint contained
three counts: (1) Violation of the West Virginia Wage Payment
and Collection Act, pursuant to West Virginia Code § 21-5-4
(Count One), (2) Violation of the West Virginia Human Rights
Act (Age Discrimination), pursuant to ⚐ West Virginia
Code § 5-11-9 (Count Two), and (3) Punitive Damages
(Count Three). [1] (Document 1-1 at 7-9.) The Plaintiff seeks
"compensatory damages, including lost wages and benefits;
unmitigated front pay; emotional distress damages; punitive
damages; attorney fees and costs; prejudgment interest on all
amounts claimed; and such further relief as the Court may find
appropriate." (*Id.* at 9-10.)

The Defendants filed their *Notice of Removal* (Document 1)
on May 30, 2014. [2] The Plaintiff filed his *Motion to Remand*
(Document 7) and accompanying *Memorandum in Support*
(Document 8) on June 11, 2014. The Defendants then filed
their *Response to Motion to Remand* (Document 10) on June
24, 2014. To date, the Plaintiff has not filed a reply to the
Defendants' response in opposition.

### II. STANDARD OF REVIEW

**\*2** An action may be removed from state court to federal
court if it is one over which the district court would have
had original jurisdiction. ⚐ 28 U.S.C. § 1441(a). [3] This
Court has original jurisdiction of all civil actions between
citizens of different states or between citizens of a state and
citizens or subjects of a foreign state where the amount in
controversy exceeds the sum or value of $75,000, exclusive of
interests and costs. ⚐ 28 U.S.C. § 1332(a)(1)-(2). Generally,
every defendant must be a citizen of a state different from
every plaintiff for complete diversity to exist. Diversity
of citizenship must be established at the time of removal.

Case 5:22-cv-00200 Document 1-1 Filed 04/25/22 Page 59 of 64 PageID #: 69

Pack v. S&S Firestone, Inc., Not Reported in Fed. Supp. (2014)

2014 WL 12625463

*Higgins v. E.I. Dupont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1998).

Section 1446 provides the procedure by which a defendant may remove a case to a district court under Section 1441. Section 1446 requires that "[a] defendant or defendants desiring to remove any civil action from a State court shall file ... a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Additionally, Section 1446 requires a defendant to file a notice of removal within thirty days after receipt of the initial pleading. It is the long settled principle that the party seeking to adjudicate a matter in federal court, through removal, carries the burden of alleging in its notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter. *Strawn et al. v. AT&T Mobility, LLC et al.*, 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted). Accordingly, in this case, the removing defendant has the burden to show the existence of diversity jurisdiction by a preponderance of the evidence. *See White v. Chase Bank USA, NA.*, Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D. W. Va. Aug. 26, 2009) (Faber, J.) (citing *McCoy v. Erie Insurance Co.*, 147 F.Supp. 2d 481, 488 (S.D. W. Va. 2001)). In deciding whether to remand, because removal by its nature infringes upon state sovereignty, this Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

"The "fraudulent joinder" doctrine permits removal when a non-diverse party is (or has been) a defendant in the case.... This doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). The Fourth Circuit sets a high standard for defendants attempting to demonstrate fraudulent joinder: "[T]he removing party must establish either: that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, or that there has been

outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original; brackets removed). Courts may consider the record beyond the pleadings to "determine the basis of joinder" and "whether an attempted joinder is fraudulent." *AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (internal quotation marks and citations omitted).

**\*3** The Fourth Circuit has described the standard for fraudulent joinder as "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley*, 187 F.3d at 424. Furthermore, "all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists" and "courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Id.* at 425 (internal quotation marks removed).

The *Hartley* court went on to explain:

> In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact. Allowing joinder ... is proper in this case because courts should minimize threshold litigation over jurisdiction. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 n. 13, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ("Jurisdiction should be as self-regulated as breathing; ... litigation over whether the case is in the right court is essentially a waste of time and resources." (internal quotation marks omitted)). Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.

> *Id.*

### III. DISCUSSION

Pack v. S&S Firestone, Inc., Not Reported in Fed. Supp. (2014)
2014 WL 12625463

The Defendants argue that removal is proper because complete diversity exists between the parties, as Defendant White was fraudulently joined. The Defendants believe that White was fraudulently joined because "[s]imply put, Plaintiff's Complaint does not state any cognizable claim against White and White can, therefore, be ignored for purposes of determining whether complete diversity exists." (Document 1 at 2-3.) The Defendants claim that Mr. White cannot be liable under the West Virginia Wage Payment and Collection Act (WVWPCA) because "only people, firms, or corporations *who act as employers* can be held liable for violations of the [WVWPCA]." (*Id.* at 3.) (emphasis in original) They further argue that "[t]here is no allegation in Plaintiff's Complaint that White was Plaintiff's employer or was an officer of Best One. In fact, he was neither." (*Id.* at 3-4.)

They next assert that Mr. White cannot be liable for age discrimination and violations of the West Virginia Human Rights Act because "[a]ccording to the Act, the term 'employer' means 'the state, or any political subdivision thereof, and any person employing twelve or more persons within the state ...,'" and again, "there is no allegation in Plaintiff's Complaint that White employed him. Indeed, he did not." (Document 1 at 4.) (citing 🔖 W.Va. Code § 5-11-3(d).) Thus, the Defendants argue that "[b]ecause the Plaintiff has no cognizable claims against White, the doctrine of fraudulent joinder applies and White can be disregarded for purposes of determining diversity. Accordingly, there is complete diversity of citizenship in this case as defined by 🔖 28 U.S.C. § 1332(a)..." (*Id.* at 4.)

The Defendants also maintain that the amount in controversy exceeds $75,000, exclusive of interest and costs, because "[a]ssuming Plaintiff is successful, lost wages and benefits alone could easily surpass the jurisdictional amount." (Document 1 at 7.) (references omitted.) The Defendants point to the potential for a punitive damages award, as well as the availability of attorney fees pursuant to both statutory claims, to further support their contention that the amount in controversy requirement is satisfied. [4] (*Id.* at 8-9.)

 **\*4** The Plaintiff disagrees, and notes that "[i]n the present case, there are no allegations that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." (Document 8 at 4.) Specifically, the Plaintiff argues that Defendant White can be held liable, as defined and recognized

under 🚩 W.Va. Code 21-5-1(h), because the term " 'officer' shall include officers or **agents in the management of a corporation or firm**, who knowingly permits the corporation or firm to violate the provisions to this article." (*Id.* at 4.) (quoting 🚩 W.Va. Code 21-5-1(h) (emphasis in original)). "It is the plaintiff's contention that as a manager of S&S, defendant White was an agent in the management of S&S who knowingly permitted the corporation to violate the Act, and is therefore liable for their unpaid wages and benefits." (*Id.* at 4-5.)

The Plaintiff also argues that White can be held liable under the Human Rights Act because 🔖 W.Va. Code 5-11-9(7) states that it is an unlawful discriminatory practice "[f]or **any person**, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution" to:

> Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass, or cause physical harm or economic loss **or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section** ...

(Document 8 at 5-6.) (citing 🔖 W. Va. Code § 5-11-9(7)) (emphasis in original). Based on this language, the Plaintiff states that under West Virginia law "employees can be held liable under the Human Rights Act." (*Id.* at 6.) The Plaintiff cites *Holstein v. Norandex, Inc.*, 194 W. Va. 727, 461 S.E.3d 473 (W. Va. 1955), for support of this proposition, and notes that the court in *Holstein* held that a person "includes both employees and employers. Indeed, any contrary interpretation, which might have the effect of barring suits by employees against their supervisors, would be counter to the plain meaning of the statutory language and contrary to the very spirit and purpose of this particular legislation." (Document 8 at 6.) (citation omitted). The Plaintiff then maintains that in his complaint, "[he] specifically alleges that defendants collectively terminated

Pack v. S&S Firestone, Inc., Not Reported in Fed. Supp. (2014)

2014 WL 12625463

[him] due to his age," in violation of ▢ W. Va. Code § 5-11-9. (*Id.*) The Plaintiff also requests an award of "his costs and expenses expended in the preparation of this Motion to Remand and Memorandum," because the "defense had no grounds to remove this matter to the district court." (*Id.* at 7.)

The Defendants respond that the Plaintiff cannot have a viable claim against an ordinary supervisor such as White under the WVWPCA because "[o]nly corporate officers may have liability under the Wage Act and there is no allegation in the Complaint that White is a corporate officer." (Document 10 at 1.) The Defendants further state that "the propriety of removal is based on the allegations contained in the Complaint, not the arguments of counsel in a legal brief," and "[n]owhere in the Complaint does Plaintiff allege that White is an officer of Best One, or that he knowingly permitted Best One to violate the Wage Act." (*Id.* at 2.) Further, the Defendants claim that the matter is unquestionably settled because Defendant White swore under oath in his affidavit that he is not a corporate officer of Best One. (*Id.*) "Simply put, White is plainly not the executive level type of "officer" contemplated by the Wage Act." (*Id.* at 3.)

With respect to the alleged violations of the Human Rights Act, the Defendants reiterate that "individuals are not subject to liability for employment discrimination unless they themselves are employers. There is no allegation in this case that White was Plaintiff's employer." (*Id.*) They maintain that Plaintiff's claim is "pled entirely under ▢ West Virginia Code § 5-11-9, which makes employment discrimination by an 'employer' unlawful." (*Id.* at 3.) (footnote omitted.)

*A. West Virginia Wage Payment and Collection Act*

**\*5** The Court finds that Defendant White is not an officer of any corporation named as a Defendant in the instant suit, and thus, cannot be liable for violations of the West Virginia Wage Payment and Collection Act. W. Va. Code § 21-5-4 states that "[w]henever a person, firm or corporation discharges an employee, the person, firm or corporation shall pay the employee's wages in full no later than the next regular payday or four business days, whichever comes first." W. Va. Code § 21-5-4(b). Further, "[i]f a person, firm or corporation fails to pay an employee wages as required under this section, the person, firm or corporation, in addition to the amount which was unpaid when due, is liable to the employee for three times that unpaid amount as liquidated damages." W. Va. Code § 21-5-4(e). The term officer is defined in the WVWPCA to "include officers or agents in the management of a corporation

or firm, who knowingly permit the corporation or firm to violate the provisions of this article," *See* ⚑ W. Va. Code § 21-5-1(h), while the term "employer" means "any person, firm or corporation employing any employee." ▢ W. Va. Code § 21-5-1(m).

The Plaintiff "conten[ds] that as a manager of S&S, defendant White was an agent in the management of S&S who knowingly permitted the corporation to violate the Act, and is therefore liable for [Plaintiff's] unpaid wages and benefits." (Document 8 at 4-5.) The language of the complaint, together with the record at the time of removal, plainly belies any contention that Defendant White was an officer of S&S, Inc. It describes White as a "manager of the defendant S&S located in Beckley, West Virginia." (Document 1-1 at 6.) Nowhere is it alleged that he was an officer, chief executive officer, chief financial officer, or served on the corporate board of S&S, Inc., d/b/a Best One.

There was also no mention of agent, principle, nor any reference to an agency relationship in the complaint between Defendants White and S&S—beyond the normal employee-employer relationship. The only reference to Defendant White's acts in the complaint is that he advised the Plaintiff "he was being terminated due to cut backs," and that the termination was "temporary but could last up to six months." (Document 1-1 at 7.) As mentioned above, courts may consider the record beyond the pleadings to "determine the basis of joinder" and "whether an attempted joinder is fraudulent." ▢ *AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (internal quotation marks and citations omitted). Defendant White's uncontested affidavit, which was a part of the record at the time of removal, indicates that White "was never [Plaintiff's] employer." (*Id.* at 28.) Further, White swore that he is "not an officer or director of Best One, nor do I have any ownership interest in the company." (*Id.*) This affidavit lends further support that no cognizable claim exists against Defendant White based on the allegations contained in the current complaint.

▢ *Goodwin v. Willard*, 185 W.Va. 321, 406 S.E.2d 752 (W. Va. 1991), the case Plaintiff cites for support in his memorandum of law accompanying his motion to remand, provides no support for remand. (*See* Document 8 at 5.) In *Goodwin*, terminated employees brought an action under the WVWPCA against three alleged owner-operators of

Pack v. S&S Firestone, Inc., Not Reported in Fed. Supp. (2014)

2014 WL 12625463

Seminole, a coal mining business. ▢ *Goodwin*, 406 S.E.2d at 754. The defendants were Mr. Morgan, Mr. Willard, and Mr. Lively. Mr. Morgan and Mr. Willard never answered or filed any appearance in the action, and default judgment was granted against them. However, Mr. Lively did appear and was subsequently granted summary judgment on the issue of whether he was an officer or agent in the management of Seminole within the meaning of ▢ W.Va. Code 21-5-1(h).

On appeal, the West Virginia Supreme Court of Appeals disagreed with Mr. Lively—and the circuit court—and found that a question of fact existed regarding whether he was an agent for Seminole. In reversing and remanding, the Supreme Court noted that "[a]lthough the appellee denies that he acted in any capacity as an agent or officer of Seminole, there is evidence which indicates that the appellee held meeting with the employees where he discussed the coal operations and promised to pay their wages." ▢ *Goodwin*, 406 S.E.2d at 757. The Supreme Court further noted that "[t]here is also evidence that the appellee purchased and delivered supplies to the mine, acquired equipment for the mining operations and visited the mine on occasion to oversee the operations." *Id.* "Although the appellee is not listed as an officer of Seminole in the articles of incorporation, his active participation in the business and his representations to the employees raise a factual question as to whether he was acting as an agent in the management of the corporation." *Id.*

**\*6** While it is true that corporate officers can be personally liable for violations of the WVWPCA when they knowingly permit the corporation to violate the provisions of the Act, here there has been no allegation that White is or was a corporate manager involved in the management of S&S, Inc., or that he knowingly permitted S&S, Inc., to violate the WVWPCA. *Accord Mullins v. Venable*, 297 S.E.2d 866, 868-69 (W. Va. 1982); *McDaniel v. West Virginia Div. of Labor*, 591 S.E.2d 277, 283-84 (W. Va. 2003).

> The position of an officer of a corporation, relative to his individual liability for the debts of the corporation, is not sacrosanct. While officers ordinarily are not held responsible for corporate debts, it is well established that where a statute so provides directors or officers may be required to account

> personally for certain obligations of the corporation ... and so long as the statute is afforded a fair and responsible interpretation so as to give effect to the legislation intent as indicated by the language used, it is valid.

*State ex rel. Haden v. Calco Awning and Window Corp.*, 170 S.E.2d 362, 364 (1969). It is clear that if Defendant White were an officer of S&S, Inc., he would be exposed to any potential liability if he knowingly permitted the corporation to violate the WVWPCA. Since the court, accepting all factual allegations in the complaint as true, could not find that he is a corporate officer or agent in the management of S&S, or that he knowingly permitted S&S, Inc., to violate the WVWPCA, he cannot be held liable for any alleged violation of the WVWPCA committed by the Plaintiff's employer, S&S, Inc.

### B. West Virginia Human Rights Act

Likewise, the Court finds that Defendant White cannot be found liable for violations of the West Virginia Human Rights Act as currently pled in the Plaintiff's complaint. Importantly, the complaint alleges that "[p]ursuant to ▢ West Virginia Code § 5-11-9 it is an unlawful discriminatory practice for an employer to discriminate against an employee based upon his age." (Document 1-1 at 8.) The complaint further alleges that "Defendants violated ▢ West Virginia Code § 5-11-9 by terminating plaintiff's employment because of his age." (*Id.*)

▢ West Virginia Code § 5-11-9 states that it shall be an unlawful discriminatory practice "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required ..." ▢ W.Va. Code § 5-11-9(1). Crucially, this is the direct language found in the Plaintiff's complaint that underpins the claim of a violation of the West Virginia Human Rights Act. (*See* Document 1-1 at 8, ¶ 26.) However, the Plaintiff cites to *Holstein*, and the language contained in ▢ W. Va. Code § 5-11-9(7), in his brief in support of remand, to argue that Defendant White aided and abetted the alleged age discrimination.

Pack v. S&S Firestone, Inc., Not Reported in Fed. Supp. (2014)

2014 WL 12625463

The Plaintiff's complaint does not contain an allegation of any violation of W. Va. Code § 5-11-9(7). It only alleges that the Defendants violated § 5-11-9(1), and the complaint quotes the language from that section. W. Va. Code § 5-11-9(7) states that it shall be an unlawful discriminatory practice "[f]or any person, employer ... to: (A) [e]ngage in any form of threats or reprisals ... or *to aid, abet, incite, compel or coerce* any person to engage in any of the unlawful discriminatory practices defined in this section." W.Va. Code 5-11-9(7) (emphasis added). Importantly, nowhere does § 5-11-9(7) or the word(s) aid, abet, incite, compel, or coerce appear in the Plaintiff's complaint. They do, however, appear in the language of the complaint at issue in *Holstein*.

 **\*7**  The facts of *Holstein* are rather analogous to those at issue here. *Holstein* involved a sixty-three year old plaintiff who was discharged from his inside salesperson employment due to a "cost cutting measure," and a "new and much younger employee was hired within months." *Holstein*, 461 S.E.2d at 475. He brought suit against the corporation, Norandex, Inc., and his manager, Mel Counts. *Id.* Divergent to the complaint at issue here, the plaintiff there alleged that the corporation violated W. Va. Code § 5-11-9(1) "by discriminating against [him] in his employment because of his age," and that his manager, Mel Counts, "was responsible for [his] discharge and violated W. Va. Code § 5-11-9(7) by aiding and abetting [the corporation] in an act of unlawful discrimination." *Id.* The manager brought a motion to dismiss, which was subsequently granted by the circuit court. *Id.* Holstein appealed, arguing that the circuit court "erred by dismissing [the manager] as a defendant," and further, that "the plain language of the West Virginia Human Rights Act clearly inculpates supervisors, such as [the manager], who participate in, approve of, sanction or ratify discriminatory acts, and that his complaint sufficiently alleges that [the manager] aided and abetted [the corporation] in carrying out ... unlawful discrimination." *Id.* at 476.

The *Holstein* court looked to the Fourth Circuit Court of Appeals and the matter of *Marshall v. Manville Sales Corp.*, 6 F.3d 229 (4th Cir. 1993) for its determination of whether W. Va. Code § 5-11-9(7) supports a cause of action against a plaintiff's supervisor and/or fellow employee for violation of the West Virginia Human Rights Act. *Holstein* detailed the rationale of *Manville* as follows:

Facts similar to those now before us were presented in [*Marshall*]. In that case, Mildred Marshall filed suit against her former employer, Manville, and Robert Manson, Manville's plant manager, alleging sex and age discrimination. Manville subsequently removed the suit to federal court, stating that Marshall had fraudulently joined Mason, a West Virginia resident, in order to avoid diversity jurisdiction. The district court subsequently dismissed Mason from the suit because he was not Marshall's employer.

On appeal, Marshall argued she had a valid cause of action against Mason under West Virginia law, while Manville maintained that Mason was fraudulently joined because he could not possibly be viewed as an "employer" under W.Va. Code § 5-11-9(a)(1), which prohibits any employer from discriminating against an individual regarding wages and other conditions of employment. The Fourth Circuit Court of Appeals stated:

> Manville's argument overlooks Marshall's cause of action against Mason as a person. As the district court noted, Marshall also sought relief under another section of the Human Rights Act which provides that it is an unlawful discriminatory practice for any person ... to ... aid, abet, incite, compel or coerce any person to engage in any unlawful discriminatory practices defined in this section.

(current version at W.Va. Code § 5-11-9(7)). This section does not limit the potential defendants to employers as defined by the West Virginia Code. *Under this section Mason can be held liable for his discriminatory actions as a person.*

*Holstein*, 461 S.E.2d at 477-78 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 230, 232 (4th Cir. 1993)) (emphasis in original).

The West Virginia Supreme Court of Appeals in *Holstein* then reversed the circuit court's dismissal of the manager, finding that "a cause of action may be maintained by a plaintiff employee as against another employee under the West Virginia Human Rights Act. Further, the cause of action may properly be based upon an allegation that the defendant employee aided or abetted an employer engaging in unlawful discriminatory practices." *Holstein*, 461 S.E.2d at 478.

2014 WL 12625463

Unfortunately for the Plaintiff, here, his complaint does not contain a claim for violating 🟨 W.Va. Code § 5-11-9(7), nor does it allege that White aided, abetted, incited, compelled or coerced the alleged discrimination. Accordingly, there is no cause of action against White, a fellow employee and the Plaintiff's supervisor, under 🟨 W.Va. Code § 5-11-9(1), as currently pled. The Defendants have successfully met their burden of demonstrating that the Plaintiff could not possibly establish a cause of action against White for violating W.Va. Code § 21-5-4 or 🟨 W.Va. Code § 5-11-9(1). Therefore, White must be dismissed as fraudulently joined, and, consequently, this Court enjoys subject matter jurisdiction over the remaining Defendants.

### CONCLUSION

**\*8** Following thorough review and careful consideration, the Court **FINDS** that it enjoys subject matter jurisdiction over the above-styled matter. Accordingly, the Court **ORDERS** that the Plaintiff's *Motion to Remand* (Document 7) be **DENIED** and that the Plaintiff's request for attorney fees and costs be **DENIED**. The Court further **ORDERS** that the Plaintiff's claims, as currently pled against Defendant White, be **DISMISSED WITHOUT PREJUDICE**, and that Richard White be removed from the docket and style of this case.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

**All Citations**

Not Reported in Fed. Supp., 2014 WL 12625463

### Footnotes

1    W. Va. Code § 21-5-4(b) was subsequently amended, effective July 12, 2013, to reflect that an employer now has until "the next regular payday or four business days, whichever comes first" to pay their discharged employee his wages. W. Va. Code § 21-5-4 (b) (2013). The amendment does not apply to the case at bar, however, as the Plaintiff was allegedly fired on March 8, 2013.

2    The Defendants attached a litany of documents to their notice of removal, many of them duplicates of earlier exhibits in the same submission. For clarity, the Court distilled the twenty eight (28) pages of exhibits into the following list: (1) a one page copy of a letter from the Secretary of State to the Defendants; (2) ten page copy of summons, complaint and docket sheet from Circuit Court of Raleigh County, West Virginia; (3) four page copy of business organizational detail from the West Virginia Secretary of State; and (5) a one page copy of an Affidavit of Richard White, dated May 30, 2014. (*See* Document 1-1 at 1-28.)

3    🟨 Section 1441 states in pertinent part:
     Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
     🟨 28 U.S.C. § 1441(a).

4    The Plaintiff does not challenge the assertion that the amount-in-controversy aspect of diversity jurisdiction is satisfied. The parties' arguments focus solely on the issue of fraudulent joinder.

---

End of Document                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.